## James M. Mooers *et ux.*
### *v.*
## Charlotte C. Dixon *et al.*

1. HOMESTEAD RIGHT — *of the time and manner in which it may be asserted.* Where a householder and his wife join in the execution of a mortgage upon premises in which they have a homestead right, but which was not released in the mortgage, the mere omission on their part to interpose their claim to that right as a defense to a bill to foreclose the mortgage, will not operate as a waiver of such right.

2. So where such a mortgage was given upon premises of value exceeding one thousand dollars; after a decree of foreclosure thereon, taken *pro confesso;* a sale under the decree without reference to the homestead right, and a confirmation of the sale; the lapse of fifteen months, and a conveyance by the master to the purchaser, and confirmation thereof; and the award of a writ of possession to the purchaser; it is *held,* that the mortgagors may, by original bill, assert their right of homestead, and, while the decree of foreclosure will not be disturbed, the sale and all subsequent proceedings will be set aside, and the master directed to sell the premises in the mode pointed out in the homestead act.

WRIT OF ERROR to the Circuit Court of Lee County; the Hon. WILLIAM W. HEATON, Judge, presiding.

On the 29th day of November, 1855, James M. Mooers executed to Charlotte C. Dixon his promissory note for the sum of twenty-five hundred dollars, payable five years thereafter, with interest at ten per cent. per annum, for borrowed money. Concurrently with the execution of the note, James M. Mooers, the maker thereof, and Charlotte M. Mooers, his wife, for the

purpose of securing the paymment of the same, executed and delivered to said Charlotte C. Dixon a mortgage upon certain lands, upon which the mortgagors resided, and which constituted a part of their homestead.

Subsequently, on the 9th day of June, 1858, for the further securing of said note, the said James M. Mooers and his wife executed and delivered to said Charlotte C. Dixon another mortgage, embracing the residue of the land which constituted the homestead of the mortgagors.

There was no release or waiver of the homestead right of the mortgagors contained in either mortgage.

In November, 1861, the note having matured, and remaining unpaid, the mortgagee filed her bill in chancery in the Circuit Court against the mortgagors and Theron Cumins, a judgment creditor of James M. Mooers, to foreclose the mortgages.

The bill for foreclosure was in the usual form of bills for that purpose, and made no reference whatever to the homestead right of the mortgagors in the premises. The summons issued in that suit was duly served upon the defendants therein, and they failing to appear, the bill was taken as confessed and a decree of foreclosure entered directing a sale of the premises by the master in the event of the non-payment of the amount found due within a given time.

The money not being paid, the master proceeded to sell the premises without reference to the homestead right therein of the mortgagors, and the mortgagee became the purchaser. After the lapse of fifteen months from the sale, the premises not having been redeemed, the master executed a deed therefor to the purchaser; and the master's report of the sale and conveyance was confirmed by the court.

Subsequently, the purchaser demanded the possession of the premises from the mortgagors, which they refused to surrender; and thereupon she applied to the court in which the proceedings for foreclosure were had for a writ of possession, which was ordered to be issued.

At this stage of the proceedings, the mortgagors exhibited their bill in chancery in the court below, against the mortgagee

14 — 35TH ILL.

and purchaser under the decree of foreclosure, and the said Cumins, reciting the proceedings for foreclosure, the sale and conveyance, and the application for a writ of possession and the granting thereof, and set up their homestead right in the mortgaged premises, which were alleged to be of a value greatly exceeding one thousand dollars. The mortgagors alleged that the debt to secure which the mortgages were given, was created since the fourth day of July, 1851, and was not incurred for the purchase or improvement of the premises ; they prayed that the decree of foreclosure and all subsequent proceedings be set aside, and that a decree be entered in the suit for foreclosure directing a sale of the premises with reference to the mortgagors' right of homestead therein pursuant to the statute.

The defendant, Dixon, answered this bill, admitting the material allegations therein, but insisting that the proceedings in said foreclosure suit and decree of said court, directing the whole of said premises to be sold to pay said mortgage debt, and the sale and subsequent proceedings thereunder, constitute and are a legal and equitable bar to the said bill of the plaintiffs in error, and the relief sought therein, and prays she may have the same benefit of defense that she would have had, had she pleaded the same, and also alleges that complainants do not show themselves entitled to any equitable relief upon the face of their said bill, and prays she may have the same benefit of such defense that she would have had, had she demurred to said bill.

Demurrer of Theron Cumins to said bill, for want of equity on the face of said bill, and that complainants are barred by said foreclosure proceedings.

The cause coming on to be heard, the court decreed that the decree in the suit for foreclosure, and the proceedings in pursuance thereof, constitute a bar to the relief sought by the mortgagors, and that their bill be dismissed.

Thereupon they sued out this writ of error; and now insist that they are entitled to be protected in their homestead right in the premises, notwithstanding the proceedings in the suit for foreclosure, and their omission to assert their right therein.

Mr. GEORGE P. GOODWIN, for the plaintiffs in error, cited the act of 1851, relating to the homestead exemption, and the amendatory act of 1857 (Scates' Comp. 576), and contended that notwithstanding the decree of foreclosure, the homestead interest under the statute is still an outstanding estate, as under the mortgage itself before it was foreclosed. And the officer making the sale under the decree has no right, under the statute, to sell the lot of ground and the buildings thereon occupied as a residence and a homestead, and embraced in such mortgage and decree (the statute having expressly exempted such lot of ground and buildings from forced sale under any *process* or *order* from any court of law or equity in this State), without first having summoned a jury of six men of his county to appraise the same, and to set off so much of the same, including the dwelling house, as in their (the jury's) opinion, would be worth one thousand dollars, in case such jury were of the opinion that the property could be divided without injury to the interest of the parties interested; and without first having,— in case such jury were of the opinion, on their appraisal, that the premises were worth more than one thousand dollars, and could not be divided as provided by law, — delivered a copy of such appraisal with a notice, giving the mortgagor and householder sixty days' notice, as provided by the statute, to pay the surplus of the decree over and above the one thousand dollars. And such officer, having made a sale of such premises, without so having complied with the statute, such sale is as against any purchaser, such mortgagor and householder being still in possession and occupying such premises as a homestead, irregular, illegal and void, and should by the court be set aside on motion, if made in season, and in case of the execution and delivery of a deed by the officer making the sale, the sale and deed should by the court be set aside on original bill filed by the mortgagor and householder having and claiming such homestead interest.

2. It is also contended by the plaintiffs in error in this suit, that, inasmuch as the mortgages contained no release or waiver of their homestead interest in the premises

embraced in said mortgages, and the bill of complaint of the defendant in error, Charlotte C. Dixon, filed in Lee county Circuit Court, to foreclose said mortgages, did not set up or claim that the plaintiffs in error, or either of them, had in and by said mortgages thereby sought to be foreclosed, or otherwise released or waived their right to the exemption from levy and forced sale under any process or order from any court of law or equity of this State, of their homestead interest in said premises, pursuant to the statute in such case made and provided; and also, inasmuch as the said bill of complaint of said Charlotte C. Dixon did not ask or pray that the said homestead right of the plaintiffs in error in the said mortgaged premises should be foreclosed, or that said mortgages should in any way or manner be declared a lien upon the same, the plaintiffs in error, by suffering a decree to be taken on the said bill of the said Charlotte C. Dixon, *pro confesso*, were concluded only as to to the averments in said bill, and consequently were not concluded as to their homestead right in said mortgaged premises by said decree, *pro confesso. Frye* v. *The Bank of Illinois*, 5 Gilm. 332; *Gault et al.* v. *Hoagland*, 25 Ill. 268.

3. When the bill of complaint whereby mortgaged premises, in which there is a homestead interest, are sought to be foreclosed, does not set up or claim that such homestead interest has been released or waived, or that the debt secured by the mortgage was contracted prior to the 4th day of July, A. D. 1851, or that the mortgage debt or liability was incurred for the purchase or improvement of the mortgaged premises, and prays for no specific relief as against such homestead interest, as was the case in the foreclosure suit of the said Charlotte C. Dixon, it would seem quite unnecessary and unreasonable to require the mortgagor, having such homestead interest, and his wife, to appear and defend such foreclosure suit, when they admit, in fact, all that is averred in the bill, to wit: the execution of the note and mortgage; that the debt is due and unpaid, and that the mortgaged premises, to the extent conveyed by the mortgage, are liable to be foreclosed to pay the debt. The homestead

right, under the statute of this State, is as much a statutory right as the right of redemption under the statute; and no one, it is presumed, will now contend that in case of a bill filed to foreclose a mortgage, and not setting up or claiming a strict foreclosure, or that the mortgaged premises should be sold without redemption, and that in order to preserve and protect such statutory right, he should appear in court and claim that such mortgaged premises should be sold, subject to the right of redemption under the statute, the court having no power to divest him of such statutory right. *D' Wolf et al.* v. *Haydn,* 24 Ill. 225 ; *Young and wife* v. *Graff,* 28 Id. 20.

4.   The decree in said foreclosure suit, and the proceedings therein, constitute no bar to the relief prayed for by the complainants below, for the reason that although the said suit was substantially between the same parties, the subject matter of this suit, to wit : the homestead interest in the mortgaged premises, was not before the court, or adjudicated by it ; a former decree in a suit in equity being a good defense in equity only when it is between the same parties and for the same subject matter.   Story's Eq. Juris., vol. 2, § 1523 ; Story's Eq. Plead., §§ 790, 791 and 792.

In the case of *Green* v. *Marks et al.*, 25 Ill. 222, the court says, in speaking of the homestead exemption clause of 1851 : " By this enactment the debtor falling within its provisions is "required to perform no act, to discharge no duty or even man-"ifest any intention to avail himself of its benefits.   The law " casts it upon him, but at the same time has provided the " means by which he may, if he shall choose, waive that benefit. " *But until he does so,* or until some one of the circumstances " which is essential to the statute ceases to exist, the exemption " continues by its own force."

The exemption continues notwithstanding such a foreclosure and sale, just as much as the right of dower would continue in the wife where she had not released her dower as provided by the statute in a mortgage foreclosed, although she were made a party to the bill of foreclosure, the bill not averring or claiming that she had so released her dower, and no defense having

been made by either the husband or wife to such foreclosure suit. *Hoskins* v. *Litchfield*, 31 Ill. 137.

Mr. JAMES K. EDSALL, for the defendants in error.

1. It is claimed that inasmuch as the defendants in the foreclosure suit permitted the decree to go against them by default, and did not in that suit in fact litigate the question as to their right to hold the property as a homestead, that they thereby only admitted such facts as were alleged in the bill, and may now, by an original bill, set up the affirmative defense they might have shown in the foreclosure suit, and thus impeach and set aside that decree.

To maintain this position the plaintiffs in error cite the cases of *Frye* v. *Bank of Illinois*, 5 Gilm. 332, and *Gault* v. *Hoagland*, 25 Ill. 268. It will at once be seen that the cases cited fall far short of establishing any such proposition. The point settled in these cases is, that where a bill *wanting some essential averment* is taken as confessed, the defendant may *on error* contest the sufficiency of the bill, and insist that the averments contained in it do not justify the decree; and that in such a case a decree *pro confesso* only concludes the party as to the averments in the bill; and if these are found insufficient to sustain the decree, it will be reversed in an appropriate proceeding for that purpose. In other words, there is, in such a case, manifest error apparent upon the face of the record.

But where the averments in the bill are *prima facie* sufficient to sustain the decree, " a party who voluntarily permits a default to be taken, thereby impliedly admits that the demand is just, *and that he has no defense.*" *Lucas* v. *Spencer*, 27 Ill. 15, 18.

The plaintiffs in error cite the case of *Green* v. *Marks*, 25 Ill. 222, to sustain their position that it was unnecessary for them to set up their claim of homestead as defense in the foreclosure suit. The question decided in that case is, that judgment and execution do not create a lien against the homestead of the debtor, and that he may sell or mortgage it free from the lien of the judgment. The language of the

court, cited by the plaintiffs in error, was used with reference to the question as to whether the judgment debtor was required to assert his claim of homestead or do any other act to prevent the same, when a party holding a judgment and execution against him was about to proceed to sell his homestead under such execution; and it evidently has no bearing upon the question as to whether it is necessary for the party claiming the homestead to appear and make his defense in a suit brought against him to foreclose a mortgage claimed to be a lien upon his homestead.

The rule upon this subject is well settled, as follows: " The decree of a court possessing competent jurisdiction is not only final as to the matter actually determined, *but as to every other matter of defense, which, if set up, would have prevented the decree, which the parties neglected to litigate, and which they might have had decided in the case.*" *Leguen* v. *Governor*, 1 Johns. Cases, 436; *Bruen* v. *Hone*, 2 Barb. 586; *Fischli* v. *Fischli*, 1 Blackf. 390; *Vail* v. *Vail*, 7 Barb. 226, 242; *Talbott* v. *Todd*, 5 Dana, 193; *Embury* v. *Connor*, 3 Comst. 511, 522; 2 Sto. Eq. Juris., sec. 895*a* and sec. 1523.

So, in a case where lands were sold under a decree to foreclose a mortgage, it is held that the *validity* of the mortgage cannot be questioned in any subsequent litigation between the parties. *Gest* v. *Flack*, 1 Green Ch. 108.

In like manner it is held that where a plaintiff in a suit at law takes judgment for a debt that has already been paid, or to which there exists any other meritorious defense, a court of equity will not relieve the defendant against the judgment unless he can show a satisfactory excuse for his laches in not interposing his defense in the suit at law. *Heinrichsen* v. *Van Winkle*, 27 Ill. 336; *Sanger* v. *Fincher*, 27 Id. 346; *Albro* v. *Dayton*, 28 Id. 325; *Lucas* v. *Spencer*, 27 Id. 15.

" Indeed, this doctrine is not limited to mere cases decided in the courts of common law; but it is applicable to all cases where the matter of the controversy has been already decided on by another court of competent jurisdiction, even though it be a foreign court, *or where it might have been made available*

*in that court as a matter of claim or defense in a suit pending in such court.*" 2 Sto. Eq. Jur. p. 204, sec. 895*a.*

The principle running through all the authorities is, that if a defendant has had an opportunity to defend, but fails to do so through negligence, equity will not relieve him. The law only favors the vigilant. In this case the plaintiffs in error had ample opportunity and means to make their defense, if they had any to make, in the foreclosure suit, yet they failed to appear and make it, nor do they give any excuse for their negligence. It is not the policy of the law to permit parties to slumber upon their rights when they have an opportunity, and are called upon to assert them in a court of justice, and then seek them in a subsequent suit. *Lucas* v. *Spencer*, 27 Ill. 17.

2. So far as there are any express authorities to be found upon this particular question in any reported case, they are all in favor of the defendants in error.

The question is fairly met and decided in the case of *Lee* v. *Kingsbury*, 13 Texas, 68. In that case, a decree or judgment had been entered foreclosing the mortgage and directing the property to be sold in a suit to which both husband and wife, who subsequently claimed the homestead, were parties; nor was the question of homestead in fact litigated in such former suit; yet it is held that inasmuch as that question might have been there litigated and determined, the parties were estopped by that judgment from subsequently asserting their claim to a homestead. *Lee* v. *Kingsbury*, 13 Texas, 68; 1 Am. Law Reg. (New Series), 710; *Tadlock* v. *Eccles*, 20 Texas, 780.

And to the same effect is the case of *Larson* v. *Reynolds*, 13 Iowa, 579.

It should be observed, that the constitution of the State of Texas provides that the homestead (defining extent and value) "shall not be subject to *forced sale* for debts" contracted after its adoption. "Nor shall the owner, if a married man, alien the same, unless by the consent of his wife in such manner as the legislature shall point out."

And the Iowa Code of 1851, exempts "from judicial sale the homestead of every head of a family," and provides that a con-

veyance of the land by the owner, if married, is of no validity unless the husband and wife concur in and sign such conveyance.

In respect to this question, there is no substantial difference between our original homestead exemption law of 1851, and the constitutional provision in Texas, and the provision in the Iowa Code upon the same subject.

The case of *Miller* v. *Marckle*, 27 Ill. 405, so far as it goes, supports the same view. The right of the wife to set up her homestead right after a decree of foreclosure against her husband, is expressly predicated upon the fact that she "*was not a party to the bill to foreclose*," etc., necessarily implying that had she been a party to the suit, she would have been estopped by the decree.

3. But it seems to be claimed, that inasmuch as the statute of 1851 provides that the homestead "shall be exempt from levy and forced sale under any process or order from any court of law or equity," &c., that the decree of the court directing the homestead to be sold, is therefore void and inoperative, and may be so held in a collateral proceeding.

If this position be a sound one, the rule will necessarily apply as well to cases where the claim of homestead has in fact been litigated, and through error in law or misapprehension of facts, decided adversely to the parties claiming the homestead right, as to a case like the present, where the decree directing the sale of the homestead has been taken on a default, without any answer having been filed setting up this defense. If the statute absolutely deprives the court of power to make a decree whereby the homestead may be effectually alienated, it is quite immaterial to what extent the question may be mooted in a particular case, the decree being absolutely void at all events. This proves too much. It is not impossible that the Supreme Court of our State, through a misapprehension of facts or otherwise, should *erroneously* affirm a decree directing the homestead to be sold. Would such a judgment of this court be void? The decree of any court of competent jurisdiction, until it is reversed in the mode prescribed by law, is just as

binding as a judgment of the Supreme Court. To illustrate by a particular example : In the case of *Reinbach* v. *Walker*, 27 Ill. 394, it is held, that " as the defendant did not prove that any portion of the premises were his homestead at the time the judgment was rendered and when the lien attached, the homestead law has no application," although the proof was in other respects sufficient to establish this defense; and the judgment of the court below against the party claiming the homestead was affirmed in this court. Now, suppose the defendant in this former suit, Reinbach, should bring an action against Walker to recover his homestead back again and should prove, in addition to the evidence adduced on the former trial, that he occupied the premises as a homestead at the time the lien attached. Would he not be estopped by the former judgment affirmed in this court from again litigating the same question that had been so decided against him ? The authorities above cited fully establish the proposition, that the decree of a court of competent jurisdiction is not only final as to the matter actually determined, but as to every other matter of defense, which if set up would have prevented the decree which the parties neglected to litigate, and which they might have had decided in the case. And it is immaterial how erroneous the decree may be, " *though it be made in palpable violation of the law itself*," it is still binding until reversed in an appropriate proceeding for that purpose. *Young* v. *Lorain*, 11 Ill. 637.

4. Again, it is urged that inasmuch as our present homestead exemption statute is so construed as to require an express release of the homestead right to be embodied in a deed in order to convey the homestead, that therefore a similar clause should be inserted in a decree of foreclosure in order to warrant a sale of the homestead under the decree. We think this argument is sufficiently answered by calling attention to the fact that the clause of the statute giving rise to this construction relates exclusively to such releases of the homestead right as may be "subscribed by the householder and his wife if he have one," and that it has nothing to do with determining in

what phraseology decrees should be expressed which direct the sale of premises claimed to be a homestead. A decree directing "all and singular" certain described premises to be sold, etc., we think still means precisely what it says.

5. The third, fourth and fifth sections of the act of February 11, 1851, directing an officer holding an execution against a householder, that before selling the homestead he should proceed to summon a jury and set off the homestead, apply solely to a sale under a general "execution against the householder," issued upon a judgment *in personam*, and do not apply to a sale under a decree in chancery, positively directing a master to sell certain specified property. A decree of foreclosure of itself determines the particular property which shall be sold to satisfy the same. This is not the case with a general judgment *in personam* for the recovery of money; and for this reason the argument drawn from the supposed analogy between sales under decrees of foreclosure and sales under executions issued upon judgments at law, falls to the ground.

6. The case of *D' Wolf* v. *Haydn*, 24 Ill. 525, is cited to sustain the point that the right of redemption from a sale under a decree of foreclosure cannot be taken away by the court; and that therefore the homestead right cannot be in any manner impaired by any judgment or decree of a court. The only question the court were called upon to decide in that case, or that the court did decide, was that a decree denying the right of redemption in such a case was erroneous, and would be reversed or modified in an appellate court. Even such a decree would not be void. It could only be assailed in a proper proceeding to reverse it. In this connection we would cite the language of this court in the case of *Fitzgibbon* v. *Lake*, 29 Ill. 177: "It really seems difficult for even good lawyers to appreciate the difference between such a case and a direct proceeding upon such a record for the purpose of reversing the order of the court, although almost every volume of our reports might teach them the difference. In a collateral action like this, such a decree, let it be ever so erroneous, is just as valid and binding as if it were regular in every par-

ticular, if the court had jurisdiction to render it. What then will give the court jurisdiction? This question we have often answered. We will quote the answer given in *Young* v. *Lorain*, 11 Ill. 637: "They all agree that enough must appear, either in the application or the order, or at least somewhere on the face of the proceeding, to call upon the court to proceed to act; and all agree that when that does appear, then the court has properly acquired jurisdiction, or, in other words, is properly set to work."

7. Does the fact that the plaintiff in error, Charlotte M. Mooers, was a *feme covert* at the time of the rendition of the decree to foreclose the mortgages against herself and husband, give her a standing in equity to impeach the decree when no unfair advantage is even alleged to have been taken on account of her position in this respect? If so, it is idle for courts even to attempt to render decrees against married women, for the reason that such decrees would settle nothing; and this acknowledged head of chancery jurisdiction had as well be abandoned at once. Such is not the law, however. *Brown* v. *Cleary*, 1 Rich. Ch. 319–323; *Curtis* v. *Brown*, 29 Ill. 229; *Lee* v. *Kingsbury*, 13 Texas, 68; *Larson* v. *Reynolds*, 13 Iowa, 579.

8. Even if the opinion of the court is against us upon the main question, and in case it should be held that the defendants in the foreclosure suit can still insist upon their homestead right in the lands sold under the decree of foreclosure, this court cannot reverse that decree. The bill in this case is not a bill of review; and if it was, it shows no error whatever upon the face of the record in the foreclosure suit. Nor does it show newly discovered evidence. On the contrary, it is an attempt to reverse a former decree by an original bill, setting up matter which might have been interposed as a defense in the former suit; and no excuse is shown why that defense was not made at the proper time. Upon the most favorable view of the case for the plaintiffs in error, the utmost that could possibly have been done, would have been to have set off to them a portion of the property equivalent to one thousand dollars in value, and there was no evidence before the court upon which it could

have proceeded to make such a decree; and even this would have been a reversal of the former decree *pro tanto,* by an original bill, not showing either mistake, unavoidable accident, or fraud and circumvention in obtaining the decree; a thing entirely without precedent, and directly subversive of the most firmly established principles of law.     *Weiner* v. *Heintz,* 17 Ill. 260.

The case of *Hoskins* v. *Litchfield,* cited by the plaintiffs in error, is not in point, for two reasons: First, the mortgage upon the homestead foreclosed in that case, was made February 26th, 1858, and was subject to the provisions of the amendatory act of 1857.   Second, all questions depending upon the form or mode of attacking the former decree of foreclosure were expressly waived by the stipulation that "the said Litchfields should have all the relief by their said motion and affidavits that they could have had by bill in chancery and depositions or other proceeding to set aside such sale, if they were entitled to any such relief upon the facts."

This opened the whole question to the consideration of the court without regard to the form or manner of presenting it, and as the mortgage was made subsequent to the homestead act of 1857, there was evident propriety in the conclusion of the court that an express waiver of the homestead exemption signed and acknowledged by the husband and wife is absolutely required in all cases as conditions to the alienation of the homestead.

Mr. Justice Breese delivered the opinion of the Court:

It is impossible to distinguish this case in principle from the case of *Wing* v. *Cropper and wife, post,* 256, or from the case of *Hoskins* v. *Litchfield,* therein referred to, reported in 31 Ill. 137.   On the authority of these cases the sale will be set aside, and the master in chancery of Lee county directed to sell the premises under the homestead act.   The decree of foreclosure will not be disturbed.   See, also, *Moore* v. *Titman,* 33 Ill. 358.

The decree dismissing the complainants' bill is reversed, and the cause remanded, with directions to the Circuit Court to set

aside the sale and direct the master to sell the premises, in the mode pointed out by the homestead act.

*Decree reversed.*