Moore et ux. *v.* Titman.

# JOSHUA J. MOORE AND WIFE

*v.*

# GEORGE TITMAN.

1. PLEADING IN CHANCERY — *allegation as to the execution of a mortgage.* In a bill to foreclose a mortgage, it was alleged that the defendants "made, executed, acknowledged and delivered a certain deed of mortgage." *Held,* that the allegation was sufficient, and could only be construed to mean that the mortgage was properly made and valid in its operation.

2. SAME — *of the reference to exhibits in the bill.* But if the allegation were not, of itself, sufficient, the instrument being referred to in the bill as an exhibit, had the same effect as if copied at large into the bill. In such case the court will refer to the exhibit to see if it appears to have been properly executed.

3. Where a bill to foreclose a mortgage executed by the defendants, husband and wife, fails to show what interest the wife held in the premises, the mortgage itself, being made a part of the bill as an exhibit, will be referred to for the purpose of ascertaining such interest.

4. CONVEYANCES — *certificate of acknowledgment — its requisites.* Appended to a mortgage purporting to have been executed by Joshua J. Moore and Ann A. Moore, his wife, was this certificate: After stating that the mortgagors appeared and acknowledged the instrument to be their voluntary act and deed, concluding thus: "And Ann A. Moore, wife of the said Joshua J. Moore, having been by me made acquainted with the contents of said deed, and having been by me examined separate and apart from her husband, acknowledged that she had executed the same and relinquished her dower to the premises therein conveyed, voluntarily, freely and without any compulsion of her said husband." *Held,* that it appears from the certificate, substantially, that the wife acknowledged the deed freely and voluntarily; that the officer made her acquainted with the contents of the mortgage, and that he examined her separate and apart from her husband. This is in compliance with the act of 1853, and is sufficient.

5. OFFICIAL SEAL — *testing clause of a certificate in reference thereto.* In the body of a certificate of acknowledgment of a deed, the officer described himself as a notary public; and following his signature, he designated himself as notary public; in the testing clause to the certificate he says: "Given under my hand and seal." *Held,* that if, when the instrument was produced, it appeared that it was his official seal that was annexed that would be sufficient, as the seal imports verity, and that the act is official and not individual.

3. PRESUMPTION — *as to transcript of records containing certificates under official seals.* A clerk, in making a transcript of a record for the Supreme Court, copied therein a mortgage, to which was appended a certificate of acknowledgment, purporting to have been made by a notary public. Opposite to the signature at the end of the certificate the copyist placed a scrawl, thus: [Seal.] *Held,* that, as

Moore et ux. *v.* Titman.

the clerk could not transcribe a literal copy of the seal, the court must suppose the representation to be of the notary's official, and not his private seal, although, in the testing clause to the certificate, the notary said: "Given under my hand and seal."

7. SEAL — *notary public — certificate of acknowledgment.* If a notary public, before whom a deed is acknowledged, only affixes his private seal to his certificate thereof, it will be insufficient, and the instrument will not be sufficiently acknowledged.

8. DEFAULT — *what it admits.* A default in a suit in chancery to foreclose a mortgage, admits that the mortgage was made and acknowledged.

9. PRACTICE IN CHANCERY — *bill taken as confessed, no proofs necessary.* When a bill is taken as confessed, the presumption is, that on the hearing the court had all the evidence necessary to sustain the decree. Indeed, in such case, proof beyond the exhibits and *pro confesso* order is unnecessary. It is entirely discretionary with the court whether it will hear any evidence on a bill taken as confessed.

10. NOTICE — *on reference to the master.* Where a default has been taken in a suit in chancery to foreclose a mortgage, and a reference is made to the master to ascertain and report the amount due, no notice is required to be given to the defendants to appear before the master on the reference. It is only when a reference is made to report evidence, or to hear proof and report facts, in contested cases, that the rule is applicable.

11. PRACTICE IN CHANCERY — *right of defendant after a default.* A defendant in chancery, being in court, has a right, in a case where the bill is taken as confessed, to appear before the master on a reference, if he thinks proper; although in such case the practice does not require notice to him to appear on the reference. Or, upon the report of the master being made, the defendant may, if he choose, file exceptions and resist its approval.

12. MASTER'S REPORT — *its requisites.* A master's report of a sale under a decree of foreclosure of mortgage, set forth that he had given the notice of the sale required by the decree. That was held to be sufficient. It was not necessary he should set out the notice in his report. The case of *Dow* v. *Seeley,* 29 Ill. 495, upon this question, approved.

13. PRACTICE IN CHANCERY — *proof required on confirmation of master's report.* Although it is not necessary that the master's report of a sale made under a decree of foreclosure should set out the particular character of the notice he gave of the sale, yet, upon an application for a confirmation of the report, it is necessary that the court should be satisfied that the sale was made in accordance with the requirements of the decree.

14. PRACTICE — *preserving evidence in the record.* Upon a motion to set aside a sale made by a master, under a decree of foreclosure, it is not necessary that the evidence of the fact that notice of the sale was given according to the requirements of the decree, should be preserved in the record, unless the confirmation of the master's report is resisted, and it is desired by one of the parties.

15. PRESUMPTION — *that the court had sufficient evidence.* The presumption is, when the court approves of the report of a sale made by the master under a decree of foreclosure, that there was sufficient evidence to warrant the confirmation.

16. MASTER'S REPORT — *when it should be filed.* It is the duty of the master, after having made a sale of land under a decree of foreclosure, to report to the court at the next term after the sale has been had; but a neglect of that duty cannot be a reason for setting aside the sale. So, where more than a year had elapsed after such a sale, before the master made his report, it was held to be no ground for setting aside the sale.

17. PRACTICE IN CHANCERY — *rule upon the master to report.* A master in chancery is the agent of the law, and not of either of the parties; and when he is charged with the execution of a decree of foreclosure, if he does not report his action under the decree within proper time, either party may take a rule upon him to compel him to file his report.

18. SAME — *of the time allowed for payment in decree of foreclosure.* A decree of foreclosure of mortgage, required the mortgagor to make payment of the amount found due, within ten days, and in default thereof that the premises be sold. It also required four weeks' notice of the sale to be given after the expiration of the time allowed for payment. It was objected that sufficient time was not allowed in the decree within which the mortgagor was required to make payment. But, under the circumstances, it was deemed sufficient. No sale could be made until the expiration of thirty-eight days; and it really did not take place until eighty-seven days after the decree, and the premises were subject to redemption for twelve months. So there was no hardship. But had the sale been without redemption, in view of the sum required to be paid, which was $3,933.30, it would have been otherwise.

19. HOMESTEAD — *of the defense or claim of the right — when and in what manner it may be interposed.* The homestead right can only be lost by release or abandonment in the mode pointed out in the statute. So, in a suit to foreclose a mortgage, in the execution of which the homestead right was not released, a mere failure on the part of the mortgagor to claim the right by answer or cross-bill, will not have the effect to bar the right, or be considered as a relinquishment of the benefits of the statute. To give a decree by default, such an effect would be to enable the husband, by indirection, to release the homestead, independent of the action of the wife, when he could not do so in any direct mode.

20. If the property is worth no more than one thousand dollars, the homestead right may be set up as a defense to the suit for foreclosure to defeat a decree.

21. Or, a bill may be filed to impeach a decree of foreclosure in such a case.

22. If the premises, however, are worth more than one thousand dollars, while the mortgagor may claim the benefit of the act, yet the court will not open a decree rendered in such a case upon the default of the defendant.

23. But when the master proceeds to execute the decree, he must, like a sheriff under an execution, ascertain whether the homestead right exists; if so, he must

proceed, in the manner pointed out in the statute, to make the sale under the decree.

24. And if the master fail to do this, the defendant may, after the coming in of the report, enter his motion to set aside the sale. Upon that motion the court will hear the evidence of the parties, and determine the question whether the right exists, and, if so, set aside the sale.

25. If the master shall allow the right, and make the sale in accordance with the statute, and the complainant shall deny the existence of the right, he may, upon the coming in of the report, move to set aside the sale, and the court will hear the evidence, determine the question, and decree accordingly.

26. When the right has not been claimed before decree entered, it will be treated, in the hands of the master, like an execution at law in the hands of the sheriff.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge, presiding.

George Titman exhibited his bill in chancery in the court below, against Joshua J. Moore and Ann A. Moore, his wife, to foreclose a mortgage executed by the defendants upon certain premises lying in Fulton county.

The deed of mortgage was in the usual form, to which was attached the following certificate of acknowledgment:

"STATE OF ILLINOIS, }
  FULTON COUNTY. }

"I, Sands N. Bond, a notary public for Canton, and for said county, do certify that on this day, appeared before me, Joshua J. Moore and Ann A. Moore, whose names appear subscribed to the foregoing deed of conveyance, and who are personally known to me to be the identical persons whose names are subscribed to said, and as having executed the same and acknowledged that they had executed the same as their voluntary act and deed for the uses and purposes therein expressed. And Ann A. Moore, wife of the said Joshua J. Moore, having been by me made acquainted with the contents of the said deed, and having been by me examined separate and apart from her husband, acknowledged that she had executed the same and relinquished her dower to the premises therein conveyed, voluntarily, freely and without any compulsion of her said husband.

Given under my hand and seal at Canton, this fourteenth day of August, eighteen hundred and fifty-eight.

[SEAL.]          "SANDS N. BOND,

"*Notary Public for Canton, Illinois.*"

The allegation in the bill in respect to the execution of the mortgage, and the interest of Mrs. Moore in the premises, is as follows: After setting out the indebtedness of Moore to Titman, and the execution by the former of a promissory note to secure the same, the bill proceeds, "and your orator further showeth that for the better securing the prompt payment of the sum of money aforesaid, at the time and in the manner specified in said promissory note, together with the interest and exchange aforesaid, the said Joshua J. Moore, together with his wife, Ann A. Moore, made, executed, acknowledged and delivered unto your orator a certain deed of mortgage, bearing date the same thirteenth day of August, A. D. one thousand eight hundred and fifty-eight, conveying unto your orator in fee simple, the following described tract or parcel of land," describing it.

The mortgage was not copied into the bill, but was made an exhibit therein, in this form: "And a true copy of the same hereunto appended marked 'A' which your orator refers to and asks that the same may be considered a part of this his said bill."

A summons was duly issued and served upon the defendants; at the return term, in June, 1861, they were allowed, upon their own application, further time to answer. At the following term in September, the defendants not having answered, the bill was taken as confessed, and a reference made to the master to ascertain and report the amount due. The master reported the amount of the mortgage debt to be $3,933.30; thereupon, the court entered a final decree, directing the payment of the money within ten days, and, in default thereof, that the master proceed to sell, after having given certain prescribed notice. On the 14th day of December following, the money not having been paid, the premises were sold, and on the 28th day of February, 1863, the master made his report of the sale to the court, and it was approved.

In regard to the notice given of the sale, the report set forth, "that in pursuance of a decree rendered in the above entitled cause at the September Term thereof, A. D. 1861, did, on the 14th day of December, 1861, at the hour of 2 o'clock P. M. on said        , after giving notice as required in and by the said decree, offer for sale," &c.

On the 2d day of March, 1863, the defendant, Joshua J. Moore, entered his motion to set aside the order approving the master's report, which motion was sustained. Thereupon, the defendant moved the court to set aside the decree of foreclosure and the sale, upon the alleged ground, as set forth in his own affidavit, that the mortgaged premises were his homestead, and had been sold by the master without reference to his rights in that regard therein. It also appeared from the affidavit that the premises were worth $10,000.

The court overruled this motion, and entered a final order confirming the sale.

The defendants thereupon sued out this writ of error.

The questions arising upon the record are: *First*, whether the due execution of the mortgage is sufficiently alleged in the bill. *Second*, whether it sufficiently appears from the bill what interest Mrs. Moore held, and intended to convey, in the mortgaged premises. *Third*, whether the certificate of acknowledgment, appended to the mortgage, was sufficient. *Fourth*, whether it was necessary that any proofs should be heard, in order that the decree, entered *pro confesso*, may be sustained; and herein of the sufficiency of the master's report upon the reference. *Fifth*, of the necessity of notice to the parties to appear before the master upon a reference. *Sixth*, whether it was necessary that the master should set forth in his report of the sale the character of notice which he gave thereof. *Seventh*, when the master's report of a sale under foreclosure should be filed. *Eighth*, of the time which should be allowed in a decree of foreclosure for the payment of the money, and *Ninth*, of the time and manner in which a claim of the homestead right may be interposed, and herein of the means by which that right may be lost.

Messrs. WEAD & POWELL and BROWNING & BUSHNELL, for the plaintiffs in error.

Messrs. ROSS, TIPTON & WINTER, and HAY & CULLOM, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This bill was filed by defendant in error against plaintiff in error and his wife, to foreclose a mortgage executed by them. Process was served upon them, they entered their appearance at the return term, and obtained an extension of time to answer for sixty days. At the next term, having failed to answer, a default was entered and the bill taken as confessed; the case was referred to the master to ascertain the amount and report to the court. His report was filed and approved, a decree for the payment of the money within ten days was entered, and on default of payment, that the master sell the mortgaged premises after giving four weeks' notice. A sale was made subject to redemption, which was reported to the court. Upon the coming in of this report, plaintiff in error entered a motion to set aside the decree and sale, which was overruled, and the sale confirmed. To reverse the decree in this case and set aside the sale, this writ of error is prosecuted.

Exceptions are taken to the sufficiency of the allegations of the bill. It is insisted that the allegation that plaintiff in error and his wife "made, executed, acknowledged and delivered a certain deed of mortgage," does not imply that it was *duly* executed and became a *valid* mortgage. We think the allegation is sufficient, and can only be construed to mean that it was properly made and valid in its operation. But if this were not so, the instrument is referred to as an exhibit, which has the same effect as if copied at large into the bill. The court will refer to the exhibit to see if it sufficiently appears to have been so executed.

It is again urged that the bill fails to show what interest the wife had in the premises, and conveyed by the mortgage. As

it is, by reference, made a part of the bill, upon inspection, we find, in the body of the instrument, that she purports to convey all of her interest, and in the acknowledgment, she relinquishes her dower in the premises. From the instrument, as a part of the bill, it appears that it was a dower interest. This allegation is sufficiently made, and this was admitted by the decree *pro confesso.*

Several objections are taken to the certificate of acknowledgment of the deed. It appears substantially, that Mrs. Moore acknowledged the deed freely and voluntarily; that the officer made her acquainted with the contents of the mortgage, and that he examined her separate and apart from her husband. This is in compliance with the act of 1853, section 1. Scates' Comp. 966. The certificate also states that she relinquished her right of dower in the premises. And the certificate must be held sufficient as to Mrs. Moore's execution of the deed.

It is insisted that the notary public before whom the mortgage was acknowledged, failed to affix his official seal. It appears that in the body of his certificate he describes himself as notary public, and following his signature he designates himself as notary public, and a seal is annexed. It is true, that in the testing clause to the certificate he says: "Given under my hand and seal." If, when the instrument was produced, it appeared that it was his official seal which was annexed, that would be sufficient, as the seal imports verity, and that the act is official and not individual. Inasmuch as the clerk, in making the transcript, is unable to transcribe a literal copy of the seal, we must suppose that the representation is of his official and not his private seal. Again, the default admits that the mortgage was made and acknowledged. If only the private seal of the officer had been affixed, the acknowledgment would have been insufficient, and the instrument would not have been sufficiently acknowledged. It would only have been an attempt at an acknowledgment; but by the default the sufficiency of the acknowledgment was admitted.

It is again urged, that the special master's report is not sufficient to support the decree. We do not deem it important

whether it was or not, inasmuch as there was a hearing on the bill, *pro confesso* order, exhibits and other proofs. The presumption would be that on the hearing the court had all the evidence that was necessary to sustain the decree. Indeed, the bill having been taken as confessed, proof beyond the exhibits and *pro confesso* order was unnecessary. It was, according to the uniform practice, entirely discretionary with the court whether it would hear any evidence on a bill taken as confessed, the examination of the exhibits in such a case not being to establish the truth of the allegations of the bill, but simply to ascertain the sum due, upon which to base the decree. There is no force in this objection.

An exception is taken, that notice was not given to plaintiffs to appear before the master on the reference. In cases where a default has been taken and a reference is made, such a notice is not required. It is only in contested cases, where a reference is made, to report evidence, or to hear proofs and report facts, that the rule is applicable. It is true, the parties being in court, they have the right in a case where the bill is taken as confessed to appear before the master on a reference if they think proper. But in such a case the practice does not require notice; or upon the master's making the report of his computation, the defendant may, if he choose, file exceptions and resist its approval.

Did the court below err in overruling the motion to set aside the sale, and in rendering a decree confirming it?· It is urged that the master, in conducting the sale, did not conform to the decree under which he acted. He reports that he had given the notice required by the decree. It was not necessary that he should set out the notice in his report, but on an application for its confirmation it was necessary that the court should be satisfied that the sale had been made in accordance with the requirements of the decree. Nor is it necessary, on such a motion, that evidence of that fact should be preserved in the record, unless the confirmation is resisted and it is desired by one of the parties. The presumption is, that the court below had sufficient evidence to warrant the order of confirmation. In the case of *Dow* v. *Seeley*, 29 Ill. 495, this court said, that we are inclined

to think that such a report, made by the master, was sufficient. And upon further and more mature reflection, we are disposed to adhere to that rule. Until rebutted, or at least objected to before approval, it will be held sufficient.

Exceptions are taken because the master's report of the sale was not filed for more than a year after the sale was made. We are unable to see how this could have affected the rights of plaintiff in error. If he desired to redeem from the sale, a certificate of the sale was no doubt filed in the recorder's office, and it would have afforded all the information necessary for that purpose. It must be presumed that he was cognizant of the sale, as it is not probable an event of such importance to his interest could have transpired, when he was a party to the suit by service, without his knowing when it was made. If he desired to ascertain whether the sale was properly made, he could, at any intervening term, have, by applying for a rule upon the master, compelled the report to have been filed. That officer is the agent of the law, and not of either of the parties, and one party has the same power as the other to compel him to perform his duty, by application to the court of which he is an officer. Notwithstanding it was his duty to report at the first term after the sale occurred, a neglect of that duty could not be a reason for setting aside the sale, when either party might have compelled him to make his report.

Exceptions are also taken to the limited time within which plaintiff in error was required to pay the money before a sale was required. The time allowed was ten days. No sale could have been made until the expiration of thirty-eight days, as the decree required four weeks' notice after the expiration of the time allowed for payment, and then the sale was subject to redemption for twelve months by plaintiff in error. Eighty-seven days elapsed after the decree was rendered and before the sale was made. In this no hardship is perceived; but had the sale been without redemption, in view of the sum required to be paid, it would have been otherwise. There is no force in this objection.

In this case the homestead exemption was not released in the

mortgage. If it then existed and continued until the time of the foreclosure, it was not cut off by the decree or subsequent sale. If that right existed, not being released by the mortgage, and the property still being occupied as the homestead by the persons entitled to claim the benefit, it might be set up as a defense to defeat a decree, if the property was worth no more than one thousand dollars. *Cassell* v. *Ross, ante,* p. 244. Or a bill might be filed to impeach a decree of foreclosure in such a case. *Hoskins* v. *Litchfield,* 31 Ill. 137. In this last case the decree of sale and all proceedings under it, were set aside on motion, but it was stipulated that the defendant should have the same relief on his affidavits and motion which he might be entitled to on the facts disclosed if a proper bill had been filed. It was, therefore, treated as an original bill to vacate the decree.

To give effect to the homestead act according to the design of its framers, the right can only be lost by release or abandonment in the mode pointed out in the statute. A mere failure to claim the right by answer or cross-bill, will not have the effect to bar the right, or be considered as a relinquishment of the benefits of the statute. To give a decree by default such an effect, would be to enable the husband to frustrate the design of the statute. It would enable him by indirection to release the homestead, independent of the action of the wife, when he could not do so in any direct mode. The act has expressly required the wife to join in the deed to have such an effect.

But in this case the premises appear, from the affidavit of plaintiff in error, to be worth a much larger sum than one thousand dollars. His affidavit shows that the premises, when the mortgage was executed, were the homestead of the mortgagors, and continued so up to the time of sale and the entry of the motion to set it aside. Uncontradicted, that affidavit *prima facie* shows that the plaintiffs in error were entitled to the benefits of the act, and there was no opposing proof. In such a case, whilst the fact that the premises are subject to the homestead exemption in part, will entitle the mortgagors to claim its benefits, yet it will not authorize the court to open the decree. Where the

master proceeds to execute the decree, he must, like a sheriff under an execution, ascertain whether the homestead right exists. If so, he must proceed in the manner pointed out in the statute, to make the sale under the decree. And if he fail to do so, the defendant may, after the coming in of the report, enter his motion to set aside the sale. Upon that motion the court will hear the evidence of the parties and determine the question of whether the right exists, and if so set aside the sale.

If the master shall allow the right, and make the sale in accordance with the statute, and the complainant shall deny the existence of the right, he may, upon the coming in of the report, move to set aside the sale, and the court will hear the evidence and determine the question and decree accordingly. When the right has not been claimed before decree entered, it will be treated in the hands of the master like an execution at law in the hands of the sheriff. In this case the homestead was not set apart to the plaintiffs in error as required by the statute, and the sale should have been set aside, unless the affidavit filed in support of the motion had been overcome by opposing evidence. The decree approving of the master's report and affirming the sale, must be reversed, and the cause is remanded, with directions to the court below to hear the evidence whether a right to claim the homestead exemption existed, and if so, to set aside the sale; but if not, then to approve the master's report and confirm the sale.

*Decree reversed.*