Graham v. Culver.

GRAHAM et ux. v. CULVER et al.

(February 18, 1892.)

RES JUDICATA—SUIT AGAINST HUSBAND AND WIFE —WIFE'S DISABILITY—HOMESTEAD.

Where a purchaser of land sold under attachment sued in equity the attachment debtor and his wife, praying for possession of the premises, that he be adjudged the owner thereof, and that certain deeds under which the wife claimed title be declared fraudulent and void, a decree granting the relief sought, although neither it nor the pleadings made reference to respondents' homestead rights, is a bar to an action to have said decree declared void, and to restrain the execution of a writ of possession, brought on the ground that the land constituted their homestead; and that, notwithstanding the wife's coverture, since Comp. Laws 1876, p. 37, § 26, provides that "if a husband and wife be sued together the wife may defend her own right; and if the hus

band neglect to defend she may defend for his right also."

Error to district court, Laramie county.

Action by Jeremiah Graham and Hannah Graham, his wife, against James M. Culver, Mowry A. Arnold, and John A. Martin, sheriff, to have a certain decree declared void, and to restrain the execution of a writ of possession issued thereunder. A demurrer to plaintiffs' petition was sustained, and they bring error. Affirmed.

*Walter R. Stoll* and *R. W. Breckons,* for plaintiffs in error. *Charles N. Potter,* for defendants in error.

CONAWAY, J. This case stands on demurrer to the amended petition. The demurrer sets up two grounds: *First,* that the amended petition does not state facts sufficient to constitute a cause of action; and, *second,* that the amended petition shows on its face that the matters put in controversy by it have already been adjudicated. It seems that the amended petition does state facts sufficient to constitute a cause of action, and, for reasons which will be apparent, it is assumed that it does, unless for the reason that it shows a former adjudication of those facts. And this resolves the two grounds of demurrer into one, which is substantially the way in which the cause has been stated and argued by counsel. And the question is, does the amended petition show on its face that the matters in controversy have been adjudicated in a former action? If this question should be resolved in the affirmative the judgment of the trial court must be affirmed; otherwise, reversed.

The amended petition sets up that there was a former action between James M. Culver and Mowry A. Arnold, the parties in interest as defendants here, as plaintiffs, and Jeremiah and Hannah Graham, plaintiffs here, as defendants. The former action was by bill in chancery. The amended petition in this action exemplifies that bill by copy as Exhibit A, and exemplifies the answer thereto by copy as Exhibit B. The amended petition, including these exhibits, shows substantially the following state of facts, which, in deciding this demurrer, are to be taken as true: The said Jeremiah Graham and Hannah Graham were husband and wife, and had occupied the premises in controversy as a homestead since 1874, but on October 24, 1883, they had, by their joint deed execut-

ed in legal form, conveyed the premises to one A. S. Emery, who, at about the same time, conveyed them to the said Hannah Graham; both deeds being acknowledged the same day, October 26, 1883, and one being recorded that day, and the other on October 31, 1883, On the 10th day of January, 1884, the said Culver and Arnold commenced an action against Jeremiah Graham on a money demand, and sued out an attachment against him in said action, and had it levied on the realty in controversy as the property of Jeremiah Graham, notwithstanding these conveyances vesting the legal title in Hannah Graham. They obtained judgment in their action against Jeremiah Graham for $725, and costs, with an order for the sale of the attached property, and a special execution issued for the sale thereof, under which it was sold by the sheriff, they becoming the purchasers for $910. Afterwards, in due course of legal proceedings, the sale was confirmed by the court, and Culver and Arnold received a sheriff's deed for the property. This execution sale and resulting proceedings were had without any affidavit that the property was worth over $1,500, which is required to authorize the sale of a homestead property on execution. Hannah Graham appeared at the execution sale, and, before the sale was effected, forbade it, saying to the people there assembled that the property was her individual, separate, and exclusive property, and not Jeremiah's. The confirmation of the sale afterwards is claimed to have been procured without notice to Jeremiah Graham; and, when Culver and Arnold received their sheriff's deed for the property, Jeremiah and Hannah Graham, still being in possession, refused to surrender possession. Thereupon Culver and Arnold brought their bill in chancery, alleging that they were the owners of the property and entitled to immediate possession thereof, and that they were unlawfully kept out of possession by Jeremiah and Hannah Graham, and that Hannah Graham's title deeds were made to delay, hinder, and defraud the creditors of Jeremiah Graham, and setting up the facts at length upon which their title was founded, and praying for possession, and to be declared the owners of the property, and that Hannah Graham's title deeds be declared fraudulent and void, and set aside. The answer denied the title and ownership of Culver and Arnold; denied that they were entitled to the possession

of the property; denied that Hannah Graham's title deeds were fraudulent; and resisted the granting of the relief prayed for by the bill. The supreme court of the territory, reversing the trial court, granted Culver and Arnold substantially the relief they asked for, and remanded the case; whereupon the district court, by final decretal order, proceeded to carry out the decree of the supreme court, and granted a writ of possession in favor of Culver and Arnold, and against the plaintiffs in error, to enforce and execute the order. Neither bill nor answer said anything about any homestead right in the premises. Plaintiffs in error brought the present action in the court below, seeking to have the sheriff's deed to Culver and Arnold declared null and void, and delivered up to them, and canceled of record, and that the judgment and decree in the former action be declared null and void, and that the sheriff be perpetually restrained from executing the writ of possession issued therein; and they ask for a temporary restraining order and costs.

Does this state of facts show an adjudication of the issues presented in the present action? It is claimed by the plaintiffs in error that it does not show an adjudication of their homestead right. Was the homestead right included in the issues adjudicated in the former action? That action has more than one object, and the bill of complaint tendered more than one issue. One object, probably the leading one, as being the immediate cause of the commencement of the action, was to obtain possession of the property,—to put plaintiffs in error out, and to put defendants in error in. To accomplish this alone the appropriate remedy would have been the legal action of ejectment. Another object, no less important, was to settle the title and ownership in defendants in error as against plaintiffs in error, by a decree declaring the title deeds of Hannah Graham fraudulent and void, and declaring defendants in error the owners of the property, as well as entitled to the immediate possession. The setting aside and declaring void the title deeds of Hannah Graham was a matter of purely equitable jurisdiction. The twofold nature of the relief sought, it being partly legal and partly equitable, has evidently led to some confusion of ideas, according as the cause has been viewed from a legal or an equitable stand-point. The supreme court of the territory, in the able and exhaustive

Graham v. Culver.

opinion delivered on the occasion of reversing the judgment of the district court in the action, uses the following language: "When the property was offered by the sheriff at public vendue, Hannah Graham, wife of Jeremiah, appeared, and forbade the sale, claiming for herself the sole and exclusive ownership of the property. Being jointly with her husband in possession, she refused to surrender to the purchasers, who, it appears, did not apply on the confirmation of their deed, as they might have done, for the writ of *habere facias*, or other appropriate execution, to put them into possession of the property, which the court, by its officer, had sold to them, but sought their remedy by a bill in chancery assailing the alleged title and ownership of the wife, and praying that she and her husband be adjudged to surrender possession to them. The appellants claiming the legal estate and the right of entry, it would seem that for them the action of ejectment was the more appropriate remedy; but since the appellees appeared in the court below, and, without objection to the form of procedure, filed their answer controverting the material allegations of the bill, inquiry upon this feature becomes unimportant." 21 Pac. Rep. 694.[1] With all due deference to the known learning and ability of the court which pronounced this criticism, it may be permissible to suggest that the criticism itself is not a well-considered one, and that had an objection to the form of procedure been interposed in due time, before answer, it would still have been unimportant. The reference to the confirmation of the deed is a mere slip of the pen; it was the sale that was confirmed before the deed was made or could lawfully have been made. A more important matter is as to the method and form of procedure. If defendants in error sought relief by bill in chancery, when they had a plain and adequate remedy at law, that fact should not be lost sight of in considering their equities now. But how could a writ of *habere facias*, or any writ of that nature, be available under the state of facts as they existed at the time? How could such a writ, issued on a judgment against Jeremiah Graham alone, be effective against Hannah Graham, or any one except Jeremiah Graham? Why should a writ of *habere facias* run at all? The attachment was not a for-

eign attachment. The judgment was not a judgment *in rem* so as to bind all the world. It was a personal judgment against Jeremiah for so much money, with a judgment order for the sale of the property attached as his, thus keeping alive the attachment lien. The court, by its officer, had not sold any property to defendants in error in the sense of warranting any title to the property. It had simply approved the execution sale, and ordered a sheriff's deed, which, in the language of the statute in force at the time, was "sufficient evidence of the legality of such sale and the proceedings therein until the contrary be proved," and would "vest in the purchaser as good and as perfect an estate in the premises therein mentioned as was vested in the party at or after the time when such lands and tenements became liable to the satisfaction of the judgment." Hannah Graham, as well as Culver and Arnold, claimed ownership and right of possession by virtue of a legal title, and one which she claimed to be paramount to theirs, with the advantage on her side that she was in possession and they were not. There had been no suit, attachment, or judgment against her. There had been no attachment or execution levied upon property as hers. There had been no execution sale or sheriff's deed of her right, title, and interest in any realty, vesting in the purchaser as good and as perfect an estate as had been vested in her. No writ in the nature of *habere facias* could run against her. No right or claim of hers had been adjudicated, and there could have been no propriety, and no warrant in law or in equity, for attempting proceedings to oust her possession under process against another person. Such proceedings, to have had any effect at all as to her possession, must have been arbitrary and wanton, as well as forcible and illegal; and if she had been deforced of her possession by such means it could not have settled any question affecting her rights or equities, and could not have prevented another suit. See Mix v. King, 55 Ill. 435, and 66 Ill. 145. We should not approach the consideration of Hannah Graham's rights with the idea that she could have been legally and effectively deprived of her possession by such means. As to the proper form of action for Culver and Arnold to adopt, it is true that an action of ejectment at law would have been available to try the right of possession, but it would not have

---

[1] Ante, 211.

Graham v. Culver.

been available to vacate and set aside the title deeds of Hannah Graham. The relief sought and the issues tendered were partly legal and partly equitable. Equity, obtaining jurisdiction for one purpose, properly proceeded to administer relief as to the entire matter within the issues. That it would do so was evidently the view of the learned solicitors for the complainants in that suit when they sought their remedy by bill in chancery. Such was evidently the view of the learned solicitors for the defendants when they answered without making objection to the form of procedure.

There were issues of equitable cognizance, as well as legal, to be determined; and this brings us to the question, what were the issues adjudicated in that suit? Having endeavored to brush away some of the fog which had settled around this case and obscured its surroundings, we will now endeavor to trace our way through the fields of *res judicata*. In the pleadings in contested suits there are often numerous allegations more or less intimately connected with the subject-matter of the litigation, and bearing upon the issues involved, which are, in no proper sense, issues in themselves, although they may be alleged on one side, and denied on the other. They are evidentiary matters, or matters of persuasive or argumentative force as bearing upon the actual issues in the cause, but are not issues in themselves, in the sense of seeking, requiring, or receiving adjudication. Such allegations may be true, and still the party making them not be entitled to the relief sought, they may be false, and yet the party entitled to the relief on other grounds. Such allegations are not necessarily included in the issues, in the finding of facts, or in the judgment. Unless specially pleaded they are not adjudicated. Courts have sometimes endeavored to lay down rules, and have made suggestions not altogether harmonious, as to the methods of determining, among these multitudinous allegations, those which constitute the real issues in the cause. Wells, in his work on Res Adjudicata & Stare Decisis, gives probably as good a discussion of this matter as any to be found under the rigid rules of the common law. The same principles, with a more liberal construction, apply in chancery. We quote from Wells: "Sec. 200. Our first inquiry herein is, what is to be regarded as a matter in issue? It is plain that there may be subordinate and

incidental matters tried during the controversy; but they are not to be considered as the matter in issue in the sense of the rule. The New Hampshire court affords us a clear though not an exhaustive definition, thus: 'Any fact attempted to be established by evidence, and controverted by the adverse party by evidence, may be said to be in issue in one sense; as, for instance, in an action of trespass, if the defendant alleges and attempts to prove that he was in another place than that where the plaintiff's evidence would show him to have been at a certain time, it may be said that this controverted fact is a matter in issue between the parties. This may be tried, and may be the only matter put in controversy by the evidence of the parties. But this is not the matter in issue within the meaning of the rule. It is that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings, which is in issue. The declaration and pleadings may show specifically what this is, or they may not. If they do not the party may adduce other evidence to show what was in issue, and thereby make the pleadings as if they were special. But facts offered in evidence to establish the matter in issue are not themselves in issue, within the meaning of the rule, though they may be controverted on the trial. Deeds which are merely offered in evidence are not in issue, even if their authenticity be denied. When a deed is merely offered in evidence to show a title, whether in a real or personal action, there is no *non est factum* involved in the matter put in issue by the plea of *nul disseisin*, or not guilty, which makes the execution of that deed a matter in issue in the case, notwithstanding the jury may be required to pass on the fact of its execution. The verdict and judgment do not establish the fact one way or the other so that the finding is evidence. The title is in issue. The deed comes in controversy directly, in one sense,—that is, in the course taken by the evidence it is direct and essential; but in another sense it is incidental and collateral. It is not a matter necessary of itself to the finding of the issue. It may be made so by the parties.'" This language has been criticised, as confining the matter in issue and the matter of *res judicata* in limits too narrow. However that may be, it makes clear the distinction between matters which are merely evidentiary, and matters which constitute the issue. And

Graham v. Culver.

it is clear that an action of ejectment might have been brought at law, and prosecuted to judgment, for the possession of the realty involved, without making an issue of the validity of Hannah Graham's title deeds; and the right of present possession might have been adjudicated without putting the title in issue. In order to adjudicate and settle in one action all questions in regard to the title and right of possession of the realty in controversy, it was necessary to bring the suit in chancery, and to charge specially the invalidity of Hannah Graham's title deeds. Evidently with this view Culver and Arnold brought their bill in chancery praying a decree giving them possession of the property ,and declaring them the owners, and declaring Hannah Graham's title deeds void. But it is argued that only the last of these three proposed issues was actually made an issue by the pleadings and adjudicated. This requires a more critical examination of the pleadings. The bill, after showing a regular course of proceedings in the attachment suit leading up thereto, alleges, in paragraph 7, the execution and delivery of the sheriff's deed to Culver and Arnold for the consideration of $910, paid by them at the time of the sale. Paragraph 7 of the answer denies every allegation of paragraph 7 of the bill. Here is an issue of title formed as fairly as ever issue was formed by a declaration of title by deed, and a plea of *non est factum.* As to Hannah Graham's title deeds, paragraph 9 of the bill charges them to have been fraudulent and to have passed no title. Paragraph 9 of the answer denies every allegation of this paragraphs of the bill. Another distinct issue: Allegations connected with the showing of title, but showing also a right of present possession, are found in several paragraphs of the bill, which are denied by the answer, forming clearly an issue upon such right of possession affirmed on one side and denied on the other, though not so tersely and succinctly as the other issues. Besides, the judgment expressly adjudicates the right of possession; and the judgment is evidence, and conclusive evidence, of what was adjudicated. These three issues evidently cover all the matters in controversy in that suit or in this. It is true an injunction is asked for in this suit; but if the matters included in these three issues be eliminated there will be no bone of contention left. The ground upon which the injunction is asked is involved

in the determination of these issues. The judgment of the district court in favor of Hannah Graham was an adjudication of all three issues against her. Is that adjudication conclusive? and does it include and bar the homestead right?

One of the main rules of estoppel by judgment reads thus: "A judgment rendered by a court of competent jurisdiction on the merits is a bar to any future suit between the same parties, or their privies, upon the same cause of action, so long as it remains unreversed; or, as otherwise phrased, the doctrine of *res adjudicata* is plain and intelligible, and amounts simply to this: That a cause of action once finally determined, without appeal, between the parties on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings, either before the same or any other tribunal." 2 Black, Judgm. § 504. "It is important to be observed, in this connection, that a judgment, when offered as evidence in a subsequent litigation, is either conclusive evidence, suffering no contradiction, or it is of no effect at all; and it is not admissible as evidence of the matter on which it is offered, except where it is conclusive; that is to say, it can never be admissible as tending to prove a given fact, for if it is offered as evidence against a stranger to the former litigation it is not admissible at all, and if against a party or privy it is conclusive." Id. § 505. "It is a general rule that a valid judgment for the plaintiff definitely and finally negatives every defense that might and should have been raised against the action; and this is true, not only with respect to further or supplementary proceedings in the same cause, but for the purpose of every subsequent suit between the same parties, whether founded upon the same or a different cause of action. A party cannot relitigate matters which he might have interposed but failed to do in a prior action between the same parties or their privies in reference to the same subject-matter; and, if one of the parties failed to introduce matter for the consideration of the court that he might have done, he will be presumed to have waived his right to do so. If a party fails to plead a fact he might have pleaded, or fails to prove a fact he might have proven, the law can afford him no relief. When a party passes by his opportunity the law will not aid him." Id. § 754. The doctrine is well stated by Wells in his treatise on Res Adjudicata & Stare Decisis:

Graham v. Culver.

"Sec. 253. The principle is the same, whether the matter which might have been adjudicated in the first suit would have been therein ground of action, or a defense against plaintiff's claim. Thus the Illinois court, quoting Bigelow on Estoppel with approval, say: 'It follows, also, from the authorities considered, that a valid judgment for the plaintiff sweeps away every defense that should have been raised against the action, and this, too, for the purpose of every subsequent suit, whether founded upon the same or a different cause; nor will equity relieve the defendant from a judgment on any ground of which he should have availed himself in the action at law.' Sec. 254. Thus, in a possessory action, a defendant is under obligation to plead all the titles under which he claims; and if he fails to do so, and judgment is rendered for the plaintiff, the defendant cannot be allowed, in a subsequent suit, to set up a title which he omitted to plead, in order to gain possession. Where an issue is made between the parties to a suit, each is presumed to advance all the evidence in his power to enable the issue to be determined correctly. If one of the parties neglects or does not wish to introduce a part of his evidence when it is known to him, the issue cannot, after a final decision, be opened to enable him to do so. If this were possible, litigation would be uselessly continued. If a party has four titles, he could institute in succession four different suits instead of having the issue of ownership determined in one suit. This does not conflict with the rule requiring a distinction between matter of the substance of the issue and mere matters of evidence. It means only that a substantial defense must be set up at the first opportunity, and not afterwards." References to numerous cases sustaining these views will be found at the sections quoted. We will not occupy space to quote them. They are abundant and uniform.

But it is urged that the homestead right is favored by the courts, and constitutes an exception to the principles of *res judicata*. Now, this is matter for very serious consideration. If a judgment of a court of competent jurisdiction expressly upon the question of title or the right of possession of realty does not settle that identical question, even as between the parties to the action and their privies, then would it seem that there are no means adequate to the purpose, and that interests in realty can never be secure; and, not being able to rely upon the judgment of our courts in such matters, we can never know when our interests in realty are safe and reliable. The doctrine of favoring homesteads seems to have been carried to its greatest extent in Illinois; so it will be necessary to examine the decisions of the courts of that state to ascertain whether, in its utmost limit, it is really to the effect that a judgment expressly upon the question of title, or the right of possession, of real estate, is not conclusive as between the parties and their privies, and whether a slumbering homestead right may be resurrected to defeat the judgment. We will not quote the cases at length, which would make this opinion additionally tedious, but will try to state their substance correctly. Over 40 years ago, away back in February, 1851, it seems the legislature of Illinois yielded to their patriotic impulses, and passed a homestead law to take effect on the 4th day of July following. It exempted to the debtor, being a householder and head of a family, a homestead to the value of $1,000. About six years afterwards, in 1857, the legislature amended this, to the effect that the husband alone could not convey or incumber the homestead; but required that the wife should join, and prescribed how the husband and wife together might incumber or convey the homestead. Under this legislation mortgages were made of homesteads, and suits were brought foreclosing such mortgages, making both husbands and wives defendants; and the court held that a decree of foreclosure in these cases, in the usual form, was not conclusive of the homestead right. The former judgment in the case at bar is not in a case of foreclosure of a mortgage; and the Illinois cases are analogous to this case only as instances of avoiding, *pro tanto*, in favor of the homestead right, the effect of the general language of the decree of foreclosure cutting off the right, title, and interest of defendants in such cases. The reason upon which the court founded this acknowledged innovation in the law of the absolute conclusiveness of judgments, according to their terms, was the legal disability of the wife to defend for her own right. The doctrine is stated as follows, in a leading case under this law, decided in 1863: "This mortgage as to the homestead right is like a mortgage in which the wife has not released her right

Graham v. Culver.

of dower, when sought to be enforced in defiance of that right. Suppose, in such a case, the wife were made a party to a bill to foreclose a mortgage, without any averment that any right of dower existed, or that the wife had released her dower, and a decree passed against the husband and wife, foreclosing the mortgage, and ordering a sale of the premises. None would contend that the right of dower would be affected by such decree, or that a sale under it would convey the premises freed from the right of dower, and for the simple reason that the law has provided a different and an only mode for the release of dower. So here the statute has provided a different and an only mode for the release of the homestead right while the premises are occupied as a homestead. The husband cannot, by failing to make the defense for himself and wife, give the mortgage in which the wife has not released the homestead the same practical effect which it would have had she thus released. This would be to defeat statute and its manifest object by a mere form." Hoskins v. Litchfield, 31 Ill. 137. The disability of the wife is set up as the basis of the decision, but the illustration of the dower right is not a happy one. Still, we would be loath to criticise this *dictum* of the supreme court of the great state of Illinois as to the "simple reason" why a decree of foreclosure would not bar the wife's right of dower in the case supposed, but we feel at liberty to quote the language of the court of last resort of the state of New York, giving its view as to the simple reason for the same result. That court says: "And when the authorities say that a judgment is final and conclusive upon the parties to it as to all matters which might have been litigated and decided in the action, the expression must be limited as applicable to such matters only as might have been used as a defense in that action against an adverse claim therein; such matters as, if now considered, would involve an inquiry into the merits of the former judgment. The existence of an inchoate right of dower in the plaintiff would not have been a defense to the action of the receiver for a sale of the premises, and a satisfaction from the avails of the sale of the judgment debt which he represented. It could not, if pleaded and shown, have prevented a judgment substantially that which was rendered." Malloney v. Horan, 49 N. Y. 116. See, also, Whitcomb v. Williams, 4

Pick. 228, and King v. Chase, 15 N. H. 13.

An inchoate right of dower may never become a perfect right. So long as the husband lives, and he may in any case outlive the wife, it is not available as a defense, or as a cause of action. Not so the homestead right. It is a present and continuing right of possession on the homestead property, so long as it is occupied as such under some statutes, or, under other statutes, such as those of New York and Wyoming, an absolute right to a homestead property of a certain value or its proceeds to an equal amount forever, and it is available as a defense to an action for the possession of the property. The real foundation for the doctrine which the Illinois court adopted was the legal disability of coverture. The cases nearly all place it on this ground. And when this disability disappears the doctrine disappears. The cases decided upon the principle under consideration, as far as they have been called to our attention or fallen under the observation of the court, were decided in 1863 and 1864. Moore v. Titman, 33 Ill. 358; Mooers v. Dixon, 35 Ill. 208; Wing v. Cropper, 35 Ill. 256. The doctrine then disappears. The latest case in which we find it mentioned is Wright v. Dunning, 46 Ill. 271, decided in 1867; and it was there stated merely to say that it was not applicable in that case. In a very lucid and able opinion it is stated with its limitations. Having stated the general rule of the conclusiveness of judgments according to their terms, the court proceeds: "It may, however, be said that the right to hold the homestead forms an exception to the rule. It has been so held to the extent that where the husband and wife are made parties, and they are entitled to homestead rights, and they are not relied upon, that the wife is not concluded or barred from asserting the right; and, inasmuch as she cannot sue alone for the right, that it may be asserted by the husband and wife, notwithstanding the decree or judgment. And this exception grows out of the statute conferring the right, which declares that the husband alone cannot release the right, but that he must be joined by the wife. If a husband and wife were to make a mortgage, and the wife were to relinquish her dower, but refuse to release her right of homestead, and when suit should be brought for a foreclosure, if that right should be cut off by the wife failing to set it up, the husband, by refusing to insist

Graham v. Culver.

upon it, or to enable the wife to do so, could, in this mode, release the homestead without the assent of the wife, and thus defeat the statute. This court, however, has not held, nor has it intended to hold, that an unmarried head of the family, capable of releasing the homestead, and occupying it, failing to assert the right, where a court is called on to pass upon the right, that he would not be concluded. This is the extent to which the exception has been carried; and when a person, not under disability, is sued, and the homestead right is involved, it will be affected by any neglect to assert it precisely the same as any other right. Appellee was not under disability, and should have set up and insisted upon the right when before the court in the partition suit, and, failing to do so then, she should now be precluded from claiming the benefit." This was a suit by a widow to enforce her homestead right in property belonging to the estate of her deceased husband. She was entitled, on his death, to both dower and homestead, but, in a suit for partition to which she was a party, had only claimed dower. Held, that she could not afterwards claim her homestead. Observe the language: "And when a person not under disability is sued, and the homestead is involved, it will be affected by any neglect to assert it precisely the same as any other right." Now consider this in connection with the following statutory provisions· "Sec. 26. If a husband and wife be sued together, the wife may defend her own right; and if the husband neglect to defend she may defend for his right also." Comp. Laws Wyo. 1876, p. 37. This section was in force in Wyoming when the former action was brought, by which the title and right of possession in the property in question was adjudicated as between all the parties in interest in the present action. The section continued in force until replaced by provisions still more sweeping in removing disabilities of married women to prosecute and defend actions. The ground upon which the Illinois courts proceeded did not exist in Wyoming. All those decisions by the Illinois courts of the character referred to are of date prior to the legislation of the state removing the disability of the wife to sue and defend alone. Such decisions are not in point under statutes such as ours, or such as the Illinois statute of 1874. The effect of such legislation is stated in an Illinois case decided in 1886. The

v. 3 wyo.—23

court says: "We cannot think but that the effect of this legislation is to destroy the unity of the husband and wife in one person, as existing at the common law, respecting the person and property rights of the wife. She now loses none of the rights pertaining to natural persons— that of personal liberty, personal security, and private property—by marriage, to any greater extent than does the man. Regarding these absolute rights, they are placed on an equality; the same remedies are open to each to enforce those rights or to redress any injury arising from their violation. The reason of the rule existing at the common law, which deprives her of the right to sue in her own name, has ceased, and the rule itself ought to go with it." Bassett v. Bassett, 20 Ill. App. 543. And the court might well have added that the legislation of that state, as of Wyoming, has provided a new rule which makes effective all the rights which the recent legislation has given her,—the rule that she may sue and defend alone. It is further to be remarked that the Illinois cases establishing the exception to the application of the principle of *res judicata* in favor of the homestead right of a married woman under the common-law disability of coverture were all cases of foreclosure of mortgages. The judgment or decree in such cases does not profess to pass upon the title or even the right of possession in the property involved. It simply forecloses and cuts off the right, title, and interest of defendants, without ascertaining or adjudicating, or attempting to ascertain or adjudicate, what the extent of that right, title or interest may be. And that is all that is sold. Purchasers know that they have to look elsewhere to ascertain what right or title they are buying. They do not look to the decree of foreclosure as settling any question of title, or even any possessory right. But in cases like the one at bar, in which the title and right of possession is put in issue, and litigated and adjudicated, they do look to the judgment or decree as the very highest possible evidence upon the queston adjudicated, whether it be of the title, or possession, or both. The homestead right, if set up in the former action and proven, would have been a complete defense to the action for the possession of the property. It would have prevented the judgment or decree of the supreme court in favor of Culver and Arnold and against Jeremiah and Hannah Graham for such

Graham v. Culver.

possession. It cannot be set up now without involving an inquiry into the correctness of that judgment; therefore it became *res judicata* under the strictest limitation of the rule as stated by Wells, by the New Hampshire court, and also in Malloney v. Horan, supra. See, also, Fischli v. Fischli, 1 Blackf. 360; Ulrich v. Drischell, 88 Ind. 358; Snapp v. Snapp, 87 Ky. 554, 9 S. W. Rep. 705; Lee v. Kingsbury, 13 Tex. 67; Cayce v. Powell, 20 Tex. 767; Tadlock v. Eccles, Id. 782; Chilson v. Reeves, 29 Tex. 281; Nichols v. Dibrell, 61 Tex. 540; and Miller v. Sherry, 2 Wall. 237.

It has been suggested, rather than argued, that the homestead right could not have been pleaded in the former action because it was inconsistent with the plea of title in Hannah Graham. How inconsistent is not apparent. Our statute recognizes the homestead right in the property of the wife as well as in that of the husband. It has been urged in argument that it was incumbent on the complainants in the former action to set up the homestead right of the defendants therein, and that their failing to do so was concealing it from the court, and misleading the court. This is a strange rule of pleading. Complainants cannot know and have no right to dictate what defendants shall rely on in defending actions. Both the title and the right of present possession in the property in question was litigated in the former action. The final result of that litigation was an adjudication adverse to plaintiffs in error. It is now sought to relitigate the same matter on the ground that the plaintiffs in error had a good defense to the former action which they did not present, and that the decree was consequently wrong,—not wrong as being an erroneous decision of the case as presented, but wrong as not being what it ought to have been if such defense had been presented. This is the condition of the matter now, however ingeniously it may be disguised. We cannot know what the judgment and decree would have been if such defense had been presented; but we do know that if any good defense had been presented and established by abundant proof, or confessed by the opposite party, and the court had erroneously ignored it, and had erroneously decided

the case on other grounds, and had rendered a final judgment and decree clearly erroneous, the error could not be corrected in this proceeding. When the supreme court of the territory, the court of last resort, acted upon the matter, however erroneously, no other court could question the correctness of its decision. In short, the jurisdiction of the court in the former action is admitted, and is clear from the pleadings, and its decree cannot be collaterally attacked. It is sought in this action to have that decree declared null and void. It has not been shown to be null and void, but the contrary. It has not even been shown that it is erroneous on the case presented in that action, but erroneous because defendants had a good defense which they withheld. In the language of Wells, supra: "If one of the parties neglect or does not wish to introduce a part of his evidence when it is known to him, the issue cannot, after a final decision, be opened to enable him to do so." And this would seem to be the rule in proceedings directly attacking a judgment, and *a fortiori* in cases of collateral attack. All matters of difference between the parties in interest in this action are shown by the petition to have been adjudicated in a former action. The demurrer to the petition was therefore properly sustained. The judgment is affirmed.

GROESBECK, C. J., and MERRELL, J., concur.

### ON REHEARING.

(August 22, 1892.)

CONAWAY, J. All the points raised in the petition for rehearing were thoroughly discussed by counsel and decided by this court on the original hearing. The title to and right of possession in the realty in controversy were directly in issue, and were adjudicated, in the former action of Culver v. Graham, (Wyo.) 21 Pac. Rep. 694.[1] This suit is a persistent attempt, on various ingenious pretexts, to ignore that adjudication, and to relitigate the title to the property and the right of possession.

Motion for rehearing denied.

GROESBECK, C. J., and MERRELL, J., concur.

---

[1] Ante, 211.