Hutchinson *v.* Lemcke *et al.*

No. 11,303.

HUTCHINSON *v.* LEMCKE ET AL.

DECEDENTS' ESTATES.—*Widow's Interest in Real Estate.—Parties to Action.—Practice.*—Under our present law, the court can in no case, for the purpose of paying debts against the estate of a decedent, order the sale of the portion of the real estate which the widow owns by reason of her marital rights, whether she is made a party to the proceeding or not.

SAME.—*Tenancy by Entireties.— Widow's Interest Prior to Statute of 1852.—Judgment.—Conclusiveness of.*—Prior to the taking effect of the statute of 1852, the widow took only a dower interest in the real estate of her husband, and the probate court had power to order the entire fee sold for the payment of debts; and when the widow claimed to be the absolute owner of real estate by reason of a tenancy by entireties, and being made a party to a petition by her husband's administrator to sell such real estate, for the payment of the debts of his estate, failed to appear, and permitted such order to be made, she is bound by such proceedings, and can not afterwards assert title.

NEW TRIAL AS OF RIGHT.— *Waiver of Objection to.—Time of Granting.*—Where, in an action for the recovery of real estate, a new trial is granted as a matter of right prior to the rendition of judgment, without exception or objection, and the parties proceed to try the case a second time, the objection which might have been made to the granting of a new trial before judgment is waived.

STATUTE OF LIMITATIONS.—*Administrator's Sale of Real Estate.*—Although an administrator's deed to real estate is prematurely made, the title of the purchaser is protected by the five years' statute of limitations, where the party injuriously affected is not under disability.

PRACTICE.—*Instructions Asked Must be Signed.*—There is no available error in the refusal of the court to give instructions asked, where the same are not signed by the party or his counsel.

From the Vanderburgh Circuit Court.

*A. C. Tanner* and *W. W. Ireland,* for appellant.

*C. Denby, D. B. Kumler, P. Maier* and *A. Gilchrist,* for appellees.

ZOLLARS, J.—Appellant brought this action to recover from Willard Carpenter, Alvin B. Carpenter and J. Augustus Lemcke, the undivided one-half of "the southwest half of lot 86," in the old plan of Evansville.

The facts in the case, as developed by the record, are sub-

stantially as follows: In 1838 Abraham Hutchinson, appellant's husband, and one Francis Amory were the owners in fee simple of lot 86, in the old plan of Evansville, as tenants in common.

On the 17th day of June, 1840, Amory conveyed his interest in the southwest half of the lot to Abraham Hutchinson and his wife, appellant, which deed was duly recorded on the 21st day of July, 1840. Abraham Hutchinson being indebted to Alvin B. and Willard Carpenter, he and appellant, on the 25th day of October, 1841, executed and delivered to the Carpenters what appellant's attorneys call a trust deed, and what appellees' attorneys insist was a mortgage, covering the portion of the lot here in dispute.

The granting portion of the instrument is in form an absolute warranty deed, in consideration of $1,960. It closed with the following: "And provided, however, and these presents are made as a deed of trust subject to the trust and conditions hereinafter mentioned. That is to say, that whereas A. P. Hutchinson is indebted to the said parties of the second part in the sum of $1,960, due and payable in one year from the date hereof, with interest at the rate of 6 per cent. from date: Now, therefore, should the said Hutchinson well and truly pay the said party of the second part the said sum of money as above provided, with interest as aforesaid, then these presents shall cease and be null and void; but in case of the non-payment of the said sum of money, or any part thereof, as above specified, it shall and may be lawful for the said Carpenters, their agent or attorney, to sell said half-lot at public auction to the highest bidder, having first given thirty days' notice in the nearest public newspaper printed in the State, of the time and place of said sale, and therefor to make to the purchaser a good and sufficient deed in fee simple, applying the purchase-money towards the liquidation of said debt and expenses of sale, and returning the surplus, if any, and from thence all equity of redemption in said premises shall cease and determine; said parties of the second part

hold a note of said Hutchinson for the sum of $1,960. In witness whereof the said parties of the first part have hereto set their hands and seals this the date above written."

This instrument was recorded on the 9th day of November, 1841.

Abraham Hutchinson died on the 30th day of May, 1842, without having paid to the Carpenters the $1,960, or any portion of it. It has not been paid, unless, as alleged in the complaint, it has been paid by the rents and profits of the premises, in the possession of appellees, or paid by Hutchinson's administrator. The premises were never sold by the Carpenters, nor by any one else as provided in the trust deed or mortgage, nor has that instrument ever been satisfied of record.

Abraham P. Coleman was appointed administrator of the estate of Abraham Hutchinson. On the 11th day of August, 1842, Coleman, as such administrator, filed a bill in the probate court of Vanderburgh county against appellant and her children, all minors, and the Carpenters, in which he alleged, amongst other things, that the personal estate was insufficient to pay Hutchinson's debts; that he died possessed, and the owner, of the half-lot here in dispute ; that it was mortgaged to the school commissioners to secure the payment of $179.40 ; that in 1841 Hutchinson was indebted to the Carpenters upon a judgment in the sum of $187.68, which they were threatening to enforce by execution; that being thus pressed, and in danger of being financially ruined by such execution, and being induced by threats and promises by the Carpenters, he agreed to, and did, take a loan from them of $805.75, which, with the amount of the judgment, made his indebtedness to them $1,000 ; that $960, by way of interest, was added, but was to be treated as a part of the principal debt, making the whole $1,960 to be paid in one year, with 6 per cent. interest thereon, and secured by the trust deed or mortgage ; that the Carpenters, to avoid a possible defence of usury, assigned to Hutchinson worthless accounts, to the amount of $960, with

an agreement that whatever portion of them could not be collected during the coming year, would be accepted back at fifty cents on the dollar, and the amount be deducted from Hutchinson's indebtedness, on condition that he would first satisfy the prior mortgage to the school commissioners; that to further avoid a possible defence of usury, the Carpenters insisted that there should be inserted in the trust deed or mortgage the power of sale, as above set out. The prayer in the bill was, that the conveyance to the Carpenters might be declared to be a mortgage; that they be compelled to take back the accounts at their face, and accept $1,000 and interest thereon in discharge of the mortgage, and that the administrator might have an order to sell the half-lot for the purpose of paying off the mortgages thereon, and other debts against the estate, and that appellant might be subpœnaed to answer the bill.

She and the Carpenters having been subpœnaed and not appearing, the bill was taken as confessed, and it was adjudged and decreed that the Carpenters were entitled to $1,-067.56, that all of the balance was usurious and void, that the deed from Hutchinson to the Carpenters was intended to be, and was, a mortgage, and that the widow and children had the right to redeem. An order was made authorizing the administrator to sell the real estate, and directing him to apply the proceeds to the payment of the Carpenters' claim, and the residue, if any, to the payment of the general debts against the estate.

On the 27th day of December, 1843, the administrator sold the half-lot in suit to Willard Carpenter for $1,000, the building having been burned before the sale. On the 12th day of February, 1844, the sale was reported to and approved and confirmed by the court. The administrator's deed to Carpenter, executed on the 24th day of February, 1844, was recorded on the 16th day of August, 1844. On the 29th day of May, 1844, Alvin B. Carpenter and wife, in settlement of his partnership affairs with his brother, executed and deliv-

·ered to Willard Carpenter a quitclaim deed for several tracts of real estate, among which was the half-lot described in the ·trust deed or mortgage by appellant and husband to the Carpenters. On the 12th day of April, 1858, Willard Carpenter conveyed the half-lot, with his other property, to Allis and Walker, assignees, for the benefit of his creditors. On the 2d day of June, 1858, Allis and Walker, as such assignees, ·sold and conveyed the half-lot to Alvin B. Carpenter. On the 11th day of March, 1863, Alvin B. Carpenter, in consideration of $10,000, and by warranty deed, conveyed the half-lot to Schapker and Bussing. On the 1st day of January, 1872, Schapker and Bussing, in consideration of $31,000, ·sold and by warranty deed conveyed the half-lot to Bernard Nure. On the 2d day of May, 1881, Bernard Nure, in consideration of $33,000, sold and by warranty deed conveyed the half-lot to the appellee Lemcke. Shortly before the sale by the administrator, the buildings on the half-lot were burned.

There was evidence adduced upon the trial, that shortly after the fire, and before the sale by the administrator, Willard Carpenter assumed to be in the possession of the half-lot, by going upon it and removing the debris therefrom.

For the purposes of a decision upon the instructions, if :such a decision shall be found to be necessary, such possession may be taken as an established fact. There was evidence also that no possession was taken by either of the Carpenters until after the sale by the administrator and the execution and delivery of his deed to Willard Carpenter, and that possession was taken by Willard Carpenter under and by virtue of the administrator's deed, and not otherwise. For the purposes of a decision of the case upon the evidence, that fact must be taken as established. The evidence shows that in March, 1845, after the execution of the administrator's deeds, Willard Carpenter took complete and exclusive possession of the half-lot, and, at an expense of at least $2,000, erected permanent business buildings thereon, which, with out-buildings, covered the whole, or nearly the whole, of the half-lot.

From that time forth until his assignment in 1858, he held the exclusive possession of the premises, rented the buildings, received the rents, and paid the taxes. After his purchase from the assignees in 1858, until he sold in 1863, Alvin B. Carpenter had the exclusive possession of the premises, rented the buildings, received the rents, and paid the taxes. Schapker and Bussing expended upon the property from $15,000 to $20,000, enjoyed the use of the property, and paid the taxes until they sold it in 1872. In like manner, Nure held the exclusive possession, paid taxes, etc., until he sold the property in May, 1881. Since then Lemcke has held the property in like manner. During all the years from the death of her husband, in 1842, until a short time before the beginning of this action, on the 1st day of June, 1881, appellant made no claim to the property, nor to any of the rents and profits.

Aside from the Carpenters, the several purchasers had no notice of appellant's rights, except such as the records afforded, and they had no actual knowledge of her claim under the Amory deed.

It is not shown by the evidence how much rent was collected by the Carpenters, nor is it shown by the evidence what the rental value of the property was, while it was held by the Carpenters, or since.

The first trial below resulted in a verdict for appellant. After verdict, and without any judgment thereon, the court granted a new trial under the statute, as a matter of right.

Mr. Palmer, as *amicus curiæ,* makes the point that under the statute the court had no right to grant a new trial without cause, and as a matter of right, until after the rendition of judgment, and that, hence, the order granting a new trial was a nullity, and that the judgment should be reversed, and the case left to be disposed of under the first verdict. If there had been an objection and exception to the granting of the new trial, there would be force in the point made. By proceeding to try the case a second time, without such ob-

jections or exceptions, it must be held that appellant waived all objections that she might have made and urged against the granting of the new trial. *Marsh* v. *Elliott*, 51 Ind. 547; *Vernia* v. *Lawson*, 54 Ind. 485.

It is assumed by counsel for appellant, and tacitly conceded by counsel for appellees, that the deed from Amory to her and her husband made them tenants by entirety of an undivided one-half of the half-lot in dispute, and that by the death of her husband appellant became the absolute owner of the undivided one-half of the half-lot, and entitled to dower in the other undivided one-half.

Without entering into a discussion of the question, we assume that such were the rights of appellant. There is no question of dower involved in this case. The action is to recover an undivided one-half of the half-lot, upon the theory that she became the absolute owner of it by the death of her husband.

In the outstart, appellant's counsel argue that the probate court had no authority to order the sale of appellant's undivided half of the half-lot, that her rights and interests therein were in no way affected by the proceedings in the probate court, and the administrator's sale and deed based thereon. This argument is rested upon the cases of *Hanlon* v. *Waterbury*, 31 Ind. 168, *Kent* v. *Taggart*, 68 Ind. 163, *Elliott* v. *Frakes*, 71 Ind. 412, *Armstrong* v. *Cavitt*, 78 Ind. 476, and *Compton* v. *Pruitt*, 88 Ind. 171.

The case of *Hanlon* v. *Waterbury, supra*, was an action by a widow for partition, she claiming to be the owner of the undivided one-third of the lots as widow, and asserting that the defendant was the owner of the other two-thirds by virtue of a sale by the administrator of her husband's estate. The defendant answered, alleging that upon the petition of the administrator to the court, he had been ordered to sell, and had sold and conveyed, the whole of the lots; that the defendant had purchased them, believing that he was getting title to the whole of them, and asked that the heirs might

be made defendants, and that the widow's interest in the several lots owned by her husband might be set off in lots, other than those purchased by the defendant.   In the decision of the case the court said: "The widow's interest was not liable for the decedent's debts.   The court did not decree its sale, and could not legally do so.   The petition filed by the administrator, praying for an order to sell the lots, stated the fact that the decedent left the appellee, his widow, surviving; and the purchasers at or under that sale must be presumed to have known that she was entitled to one undivided third of the lots, which was not subject to sale for the payment of the husband's debts; and hence they can not claim to be purchasers in good faith, believing they were thereby acquiring unincumbered titles to the whole of the lots."

In the case of *Kent* v. *Taggart, supra,* the widow was not a party to the proceedings by the administrator for the sale of the real estate of her husband, and, of course, was not bound thereby.

The case of *Elliott* v. *Frakes, supra,* was an action by two children to recover real estate which they claimed as devisees of their mother.   The leading facts set up in their complaint are, that their father died in 1854, the owner of real estate, and left surviving their mother as his widow; that by virtue of her marital relations, she became the owner in fee of the undivided one-third of the real estate; that, having willed that third to the plaintiffs, she died in February, 1856.   The answer by the defendant, not denying the averments in the complaint as to the surviving widow and her will, set up the appointment of an administrator of the estate of the husband, and an order for, and the sale of the whole of the real estate by the administrator after the death of the widow, and the purchase of it by the defendant, and that the plaintiffs were parties to that proceeding.   It was held, that, by not denying, the answer admitted the survival of the widow, to whom one-third of the land descended in fee simple.   It was said: "Upon the facts thus admitted, the common pleas court

\* \* had no power to order the sale of more than two-thirds of the tract of land in question, for the payment of the debts and demands against the estate of John Sipe, and if the order of sale, set up in this paragraph of answer, purported to authorize and direct the sale of the whole tract, it was simply inoperative and void, as against the interest which descended to the widow." In answer to the contention that the plaintiffs were bound by the order of sale, it was held that as they were parties only as the children and heirs of their father, they were bound only as such, and not as the devisees of their mother, and that hence the interest which they got from her was not affected by the proceedings and order of sale.

The case of *Armstrong* v. *Cavitt, supra,* was an action for the partition of real estate by the children and heirs of Armstrong, deceased. They alleged in their complaint that their father left surviving a second wife, who had since died without children, and that they thereby became the owners of the one-third of the real estate which had descended to her from their father. The defendants answered that the administrator of the estate of the plaintiffs' father had applied for an order from the court to sell the whole of the real estate of the father for the payment of debts against the estate; that to that proceeding the plaintiffs and the widow were made parties by proper notices; that the plaintiffs appeared and answered by guardian *ad litem,* and that the widow was defaulted; that the court found that the widow was owner of a life-estate in one-third part of the real estate, and ordered the whole of it to be sold subject to that life-estate; that afterwards the widow consented that her so-called life-estate might be sold also by the administrator, and he sold the whole of the real estate, and paid over to the widow the value of her life-estate. It was held that under the statutes of descents, upon the death of the widow, the share which descended to her would descend to the plaintiffs, children by the first wife. It was also held that so far as the administrator's petition

sought the sale of the widow's interest in the real estate, the court of common pleas did not have, and could not acquire, jurisdiction of the subject-matter of such petition; that her interest in the real estate descended to her in fee simple, free from all demands of the creditors of her deceased husband, and, therefore, was not subject to be converted into assets for the payment of his debts. It was also held that the court did not have jurisdiction of the persons of the plaintiffs, as children of the decedent, so as to bind them as to any interest then held by the widow, because, at that time, they had no interest in the portion that had descended to her.

The case of *Compton* v. *Pruitt, supra,* was an action for partition by a widow. The defendant answered that the administrator of the estate of the plaintiff's husband procured an order to sell the entire fee simple of the land to pay the debts against the estate; that the plaintiff was a party to that proceeding; that in pursuance of the order, the administrator sold the whole of the land, and that the purchasers, with the knowledge of the plaintiff, took possession, and had occupied the land in good faith for ten years, and claimed to own it in fee simple. In deciding the case, BICKNELL, C. C., quoted section 75, 2 R. S. 1876, p. 519, which gave the court authority to sell the real estate of the deceased, and said that that section gave the court no authority to sell the wife's land; that when the husband dies his wife's one-third is no longer the real estate of the deceased. After quoting the statute which provides that the petition by the administrator for a sale of real estate shall contain "a description of the real estate of the deceased, liable to be made assets for the payment of his debts, or so much thereof as the executor or administrator may deem it necessary to sell," it was said: "In this case the petition stated that the decedent died seized of the land, etc., leaving a widow. That was equivalent to a statement that only two-thirds of it was liable to be made assets. It notified the court and all parties in interest to that effect, as fully as if the language had been that of clause 3, *supra,*

and had stated expressly that the land to be sold was two-thirds of the land described. So the notice of the application to sell stated that the administrators had filed their petition to sell the real estate of the decedent, nothing more. Such a petition and notice did not inform the widow of an intended attack upon her rights, and she was guilty of no laches in failing to appear in the proceeding. She had a right to presume that the land liable to be made assets was the only subject of the petition, and against such a petition she had no defence." After quoting from cases, it was further said: " These cases show that, in Indiana, under the ordinary statutory proceeding to sell a decedent's land to make assets, the attempted sale of the widow's land is a mere nullity and has no effect upon her rights. She remains a tenant in common with the purchaser."

These decisions have been approved in later cases, and we have no doubt stated the law of the cases in which they were pronounced correctly. *Flenner* v. *Travellers Ins. Co.,* 89 Ind. 164; *Nutter* v. *Hawkins*, 93 Ind. 260; *Matthews* v. *Pate*, 93 Ind. 443; *Pepper* v. *Zahnsinger*, 94 Ind. 88; *Clark* v. *Deutsch*, 101 Ind. 491; *Frakes* v. *Elliott*, 102 Ind. 47.

A careful examination of the cases above cited and stated will show that they rest, in the main, upon the propositions:

*First.* That the courts have no authority to order the sale of lands to pay debts against the decedent's estate except the lands belonging to, and forming a part of, the estate.

*Second.* That upon the death of the husband, one-third, one-fourth, or one-fifth of his real estate, according to the value of the whole, descends to, and becomes the property of, his widow in fee simple, free from all demands of creditors, and does not belong to, or form a part of, the decedent's estate.

*Third.* That parties to a proceeding by the administrator to obtain an order for the sale of real estate to pay debts are bound, and only bound, in the capacity in which they are sued.

*Fourth.* That the statement in the petition for such an order, that there was a surviving widow, is, in law, equivalent to a statement that she is the owner in fee simple of the third, fourth or fifth part of the real estate, according to the value of the whole, as against all demands of creditors, and that, therefore, the application is, in law and in fact, only to sell the remainder as belonging to, or forming a part of, the estate.

It results from these propositions, that in no case can the court, under our present system, for the purpose of paying debts against the estate, order the sale of the portion of the real estate which the widow owns by reason of her marital rights. If she is not made a party to the proceedings by the administrator to procure an order for the sale of the real estate, of course, neither she nor her rights can be affected thereby. If she is made a party to such proceedings as a widow, the record will affirmatively show her rights; that as such widow she owns a part of the real estate; that the portion which she thus owns is not a part of the estate liable for the debts, and hence can not be sold for that purpose. And thus the record will be notice to the court and to the world that her portion of the real estate can not be, and has not been, sold by the administrator. A statement of the real estate of which the decedent was the owner is necessarily a statement that the widow owns a portion of it, which is not subject to sale by the administrator.

The above cases are not conclusive or controlling here. Under the law in force at the time the probate court ordered the sale of the half-lot, and until the statute of 1852, the widow did not take a fee in any portion of her husband's real estate, but only a dower interest. The probate court, therefore, had authority to order the sale, and direct the conveyance, of the fee to the whole of the real estate of which appellant's husband was the owner at the time of his death.

The Carpenters had a conveyance for the half-lot, as we have seen, absolute in form, with power to sell and apply the proceeds to the payment of the $1,960, purporting to be due

to them from appellant's husband. The purpose of the bill filed by the administrator in 1842 against appellant and her children, and the Carpenters, was to cut out the usurious portion of the debt to the Carpenters, to have the conveyance to them declared to be a mortgage simply, to quiet the title to the half-lot as against all claims by them, and to have the half-lot sold as property belonging to, and forming a part of, the estate, for the payment of the amount due on the mortgage and other debts against the estate. All this the probate court, as then constituted, and exercising chancery powers, had authority to do.

It was alleged in the bill that appellant's husband died possessed, and the owner, of the entire half-lot. The bill showed upon its face that appellant was the widow of the decedent, and while that might show that she, as such widow, was entitled to dower, it would not show that she had any other interest in the half-lot. The bill, therefore, was not notice to the court, nor to any one else, of appellant's rights under the deed from Amory to her and husband. She was the owner of the undivided one-half of the half-lot by virtue of that deed and the death of her husband, and not by virtue of her marital relations only, as in the cases above noticed. As we have said, one purpose of the bill was to settle the title, so that the half-lot might be sold as realty, forming a part of the estate. Appellant was properly notified to appear and answer the bill, neglected to do so, it was taken as confessed, and the whole of the half-lot was ordered sold. The bill notified appellant that the administrator was claiming the whole of the half-lot as a part of the estate, and asking for its sale as such.

It was stated in the bill, it is true, that she was the widow of the decedent, but the averments of the bill, taken together, amounted to an averment that she had no rights in the half-lot except as widow. The bill was a challenge to her to resist the claims of the administrator and assert her title. She knew that as widow simply she took nothing in the undivided

half of the half-lot, and that her title was under the deed from Amory. The bill notified her that one purpose was to settle the title to the half-lot, and she was bound to know that unless she appeared and set up her title, the whole of the half-lot might be adjudged to be a part of the estate of her deceased husband, and ordered sold as such to pay the debts against that estate. That adjudication was made, the whole of the half-lot was ordered sold as a part of the estate, it was so sold, the sale was confirmed, and the deed was made in 1844.

The record of the proceedings contained nothing to give notice to the court or to any one else of appellant's rights under the Amory deed, nor to put any one upon inquiry. Under the law as applied to the facts in the case, appellant can not now be heard to say that she was the owner of the undivided half of the half-lot, and that the sale under the orders of the court is a nullity. We are amply supported in this conclusion by the recent case of *Lantz* v. *Maffett*, 102 Ind. 23, which involved these facts: A widow and mother took one-third of her deceased husband's real estate. She subsequently married, and died during coverture. Under the law as applied to these facts, the real estate, which descended to her at the death of her first husband, at his death, descended in fee simple to her children by that husband. After her death, however, an administrator of her estate was appointed. He petitioned the court for an order to sell the realty to pay the debts against her estate, and alleged therein that she was the owner thereof in fee. To this petition and proceeding her children by her first husband were made parties, and answered by a guardian *ad litem*. The real estate was ordered to be, and was sold by the administrator. The children subsequently brought an action against the ·purchaser, and, by the judgment of the court below, recovered the real estate. The purchaser appealed, and this court, reversing the judgment, held that the court had jurisdiction to try and determine the question of title to the real estate sought to be sold

by the administrator to pay debts due from the estate of the intestate, and that the children were precluded by the proceedings and judgment ordering the sale, from afterwards setting up title to the real estate.

As to the title to the half-lot, and any claim of appellant thereto, Willard Carpenter, as any other person might have done, had a right to rely upon the record of the proceedings which resulted in the order of sale. That record showed an adjudication that the half-lot belonged to and was a part of the estate of appellant's deceased husband, and that she had no interest therein.

With much ability and research, appellant's counsel argue at length that Willard Carpenter could not hold the half-lot under his purchase from the administrator, and that his purchase enured to the benefit of appellant. This argument is based upon the contention that he was a trustee under the instrument, which they insist was a trust deed, and that as such trustee he could not purchase and hold the property which he held for his *cestui que trust*, and that he could not deal with the property, except to sell it as in the instrument provided.

It is not necessary for us to express an opinion as to whether that instrument was simply a mortgage to secure a debt. That question was settled by the probate court in the proceeding already noted, in which the administrator, the Carpenters and appellant were parties. That court had the undoubted right to settle that question in that proceeding, and did settle it, by adjudicating and decreeing that the instrument was a mortgage simply, from which appellant and the heirs might redeem. It was not left for the Carpenters to sell under the power of sale contained in the mortgage. The effect of the judgment and decree was that the Carpenters could not, and should not, sell the property to make their claim, because it was adjudged and decreed that the administrator should sell it and pay off the Carpenters' mortgage. The court thereby took the property into its custody to be disposed of as it had directed.

Hutchinson v. Lemcke et al.

Whatever might have been said originally, after that adjudication and decree, the Carpenters did not hold the property, or any part thereof, for sale as trustees for appellant, because, First, by that adjudication it was determined and settled that appellant was not the owner of the whole, nor any portion of the half-lot; Second. The court, as we have seen, took the property into its custody, decreed that the Carpenters had nothing but a mortgage, and that the administrator should sell the property and pay off the mortgage; Third. The administrator sold the half-lot in obedience to the orders of the court, and, the presumption is, paid off the Carpenter mortgage. There was no reason, therefore, why Willard Carpenter might not purchase the half-lot from the administrator. When we hold that the probate court had authority to settle the question of title, and order the sale of the half-lot, and that Willard Carpenter might purchase it, we have disposed of the case.

Aside from the questions of the power of the probate court to order the sale, and the right of Carpenter to purchase, appellant makes no question as to the regularity of the probate proceedings which resulted in the sale, except a question that the administrator's deed was prematurely made. The record does not affirmatively show that fact, and if it did it would make no difference, as appellant commenced no action to recover the half-lot within five years from the time the sale by the administrator was confirmed by the court. *Vancleave* v. *Milliken*, 13 Ind. 105; *Vail* v. *Halton*, 14 Ind. 344; *Nave* v. *Tucker*, 70 Ind.15; *White* v. *Clawson*, 79 Ind. 188; *Gray* v. *Stiver*, 24 Ind. 174; *Brenner* v. *Quick*, 88 Ind. 546; *Hatfield* v. *Jackson*, 50 Ind. 507; *Wright* v. *Wright*, 97 Ind. 444.

The judgment of the court below in favor of appellees is right upon the evidence, aside from any question of the twenty years' statute of limitations.

It is not improper to note in passing, however, that from the time Carpenter received the deed from the administrator in 1844, until this action was commenced in 1881, he and

his grantees have been in the exclusive, uninterrupted and unquestioned possession of the half-lot.

There is no available error in the refusal of instructions asked by appellant. In the first place, they were not signed by appellant, nor by her counsel, as the statute requires. R. S. 1881, section 533; *Jeffersonville, etc., R. R. Co. v. Vancant,* 40 Ind. 233; *Terre Haute, etc., R. R. Co.* v. *Graham,* 46 Ind. 239; *Sutherland* v. *Hankins,* 56 Ind. 343; *State, ex rel.,* v. *Sutton,* 99 Ind. 300, and cases there cited. In the second place, some of them are based upon the theory that the orders and decree by the probate court, and the sale by the administrator, were nullities, and that notwithstanding that decree and the sale and the purchase by Willard Carpenter, he held and possessed the half-lot as appellant's trustee. They were, therefore, based upon an erroneous theory, and were properly refused. Others are based upon the theory that the orders and decree of the probate court, the sale by the administrator, and the purchase by Willard Carpenter were nullities so far as concerns the interest now claimed by appellant, and that hence, as to that interest, Carpenter and his grantees were tenants in common with appellant. Here again, the theory is a false one, and the instructions for that reason were properly refused.

It can make no difference whether Carpenter may have taken possession before or after the sale and deed by the administrator. Under the judgment and decree of the probate court, to which all interested persons were parties, he could no longer be regarded as in any sense a trustee. Under the conclusions we have felt constrained to adopt as to the force and effect of the proceedings by the probate court, the instructions given by the court upon the trial below were more favorable to appellant than they should have been. The giving of them, therefore, can not be urged by her as an available error.

It results from our holding that the judgment must be affirmed. It is, therefore, affirmed at appellant's costs.

Filed June 19, 1886.