Clevenger v. Figley.

J. M. CLEVENGER *et al.* v. SARAH M. FIGLEY,
*Insane, etc.*, *et al.*

No. 13,523.   ( 75 Pac. 1001.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Foreclosure—Joint Consent—
Judgment Conclusive.* In an action to foreclose a mortgage
given by the owner of land jointly with the guardian of his in-
sane wife, the district court has jurisdiction to determine whether
or not the premises were a homestead at the time the mortgage
was executed, and to decide whether or not the instrument ex-
pressed the joint consent of husband and wife; and a judgment
involving an erroneous decision of those matters is not open to
collateral attack, but is valid and binding upon the parties and
their privies until corrected in a direct proceeding for that purpose.

Error from Brown district court; WILLIAM I. STU-
ART, judge. Opinion filed March 12, 1904. Reversed.

STATEMENT.

PRIOR to September 4, 1888, J. J. Figley was the
owner of 360 acres of land in Brown county. On
that date his wife, Sarah M. Figley, was adjudged to
be insane, and Samuel Huston was appointed her
guardian. On November 3, 1888, after formal pro-
ceedings for that purpose, the probate court directed
the guardian of the wife to join with the husband in
the execution of a mortgage upon the land to secure
the payment of the sum of $7500, according to the
terms of a promissory note due in three years from
the date of the order. The executed mortgage was
approved by the probate court. The obligation se-
cured by this mortgage was not paid at maturity, and
after default the holder commenced an action in the
district court of the proper county to foreclose it.
J. J. Figley, Sarah M. Figley, and Samuel Huston,
as guardian of Sarah M. Figley, were made parties

defendant.   The petition exhibited all the allegations common to such cases, and besides these recited the insanity of Sarah M. Figley, the appointment and qualification of Samuel Huston as her guardian, the probate proceedings resulting in the mortgage, and made the following specific charge :

"That said Sarah M. Figley has not now, nor did she ever have, any claim, right or title or interest in the property hereinafter described except as the wife of the said defendant J. J. Figley."

The prayer was for a first lien upon the land, its sale, and a bar against all defendants asserting or claiming, after sale, any right, title or interest of any kind in the land.   On March 3, 1902, the court rendered a judgment in favor of the plaintiff, foreclosing the mortgage.   The record of the proceedings recites the appearance of Sarah M. Figley and Samuel Huston, guardian of Sarah M. Figley, an insane person, by their attorney, the announcement of their readiness for trial, their waiver of a jury, the hearing of evidence, and the argument of counsel.   It likewise discloses a finding of the court that Sarah M. Figley was an insane person, and the wife of J. J. Figley ; that Samuel Huston was duly and legally appointed guardian of her person, estate, and property ; that he properly qualified as such guardian and has ever since acted in that capacity.

After a finding relating to the execution and delivery of the note sued on, appears the following :

"The court further finds that in order to secure the payment of said note and the interest thereon the defendants J. J. Figley and Sarah M. Figley, by her guardian, Samuel Huston, executed, duly acknowledged and delivered said mortgage as in the petition described on the following tracts of land in Brown county, Kansas, to wit:   The east half of section

twenty (20), township four (4) south, of range seventeen (17) east, all containing three hundred and sixty (360) acres, and that the said described lands were the property of the defendant J. J. Figley, and the title and ownership thereof were not in said Sarah M. Figley, his wife, and that said plaintiff's mortgage is a first lien thereon.

"That the southeast quarter of said section 20, township 4, range 17, is the homestead of said defendant J. J. Figley and his family."

Other findings staple to all foreclosure judgments appear, and orders for the sale of the mortgaged premises, the application of the proceeds of sale, and the exclusion of the defendants from interest in the land, usual in such cases, are shown. The order of sale, however, is qualified as follows:

" That as the southeast quarter of said section 20, township 4, range 17, is a homestead as herein found, it is ordered that the northeast quarter of the said section 20, township 4, range 17, and the southwest quarter of the northeast quarter of section thirty-one (31), township 4, range 17, be first advertised, appraised and sold, or so much thereof as may be necessary for the payment of plaintiff's claim. But if sufficient is not realized from such sale to satisfy said judgment, then the homestead, being the southeast quarter of section twenty (20), township four (4), range seventeen (17), be appraised and advertised and sold in like manner for the payment of any balance due."

The defendants Sarah M. Figley and Samuel Huston, guardian of Sarah M. Figley, filed no motion for a new trial and have at no time taken any steps for the modification or reversal of this judgment. The land ordered to be sold first proving insufficient for the satisfaction of the lien upon it, the so-called homestead tract was then sold upon an *alias* order of sale, and after a confirmation of the sale it was conveyed

by the sheriff to the purchaser, A. L. Figley. His deed was recorded March 8, 1893. No exceptions were taken to these proceedings and no steps have since been taken looking to their modification or reversal.

Afterward A. L. Figley executed several mortgages upon the land, which were subsequently foreclosed by suits in the United States circuit court for the district of Kansas, and under the decree of that tribunal the homestead tract was again sold, and was conveyed to Peter J. Clevenger, one of the plaintiffs in error in this court. In 1899 J. J. Figley died intestate, leaving as his heirs his widow, Sarah M. Figley, and five adult children. On May 8, 1900, Samuel Huston, as guardian of Sarah M. Figley, insane, brought an action to quiet the title of Sarah M. Figley to the undivided one-half of the homestead tract of land, which, at the time of her husband's death, she occupied with him and which she has continued to occupy to the present time.

In September, 1902, Samuel Huston was discharged as guardian of Sarah M. Figley, and E. H. Keller, who succeeded him, was substituted as plaintiff in the action. Upon a final hearing the court found that the land in controversy was a homestead at the date of the Johnson mortgage in 1888, and that Sarah M. Figley had never consented to the execution of that instrument. Therefore, judgment was rendered declaring that such mortgage, the judgment of the district court of March 3, 1892, foreclosing it, the sale of the land to A. L. Figley and the sheriff's deed to him were all utterly void and of no effect whatever. It was conceded that, by the foreclosure proceeding in the federal court, Peter J. Clevenger had acquired the interest of A. L. Figley in the land as an heir of

J. J. Figley, being an undivided one-tenth of the whole, and the title to that much of it was quieted in Peter J. Clevenger. But the title of Sarah M. Figley to the undivided one-half of the land and the title of the children of J. J. Figley, other than A. L. Figley, to the remaining undivided four-tenths of it, were quieted in them to the same extent and effect as if the mortgages above mentioned had never been made and the court proceedings referred to had never occurred.

The legal propriety of that judgment is challenged by this proceeding in error.

*W. P. Todd*, and *Jackson & Jackson*, for plaintiffs in error.

*Buckles & Pearl*, for defendants in error.

The opinion of the court was delivered by

. BURCH, J.: In his petition the guardian of Sarah M. Figley presented to the district court a mortgage on the real estate in controversy, executed by him in pursuance of an authority conferred by the probate court having general jurisdiction of the estate of his ward, and prayed that it be declared to be a void thing, creating no rights and no liabilities and binding upon no person and no property whatsoever. This judgment was asked against the privies in estate of the mortgagee. In the case of *Johnson v. Figley*, the mortgagee presented the identical instrument, together with the probate proceedings upon which it was based, to the same tribunal, and asked to have it declared a valid thing, creating just obligations in his favor, rightfully enforceable against Sarah M. Figley and Samuel Huston, as her guardian, who were parties to the cause, and asked to have it declared a first

Clevenger v. Figley.

lien upon the very land involved in the present suit.

In this case the ground of relief is that Sarah M. Figley had a special interest in the land which prevented the mortgage from becoming effectual for any purpose. In the former suit the ground of relief was that Sarah M. Figley had no interest in the land which prevented the mortgage from becoming effectual as security for the mortgage debt. The court, the parties, the land, the mortgage and the issues of law and of fact are identical in both suits. A decision has been rendered in each one. What difference of power in the court to pronounce its judgment is disclosed by the two cases?

By the act of bringing suit, the guardian necessarily affirmed that the district court had jurisdiction to decide upon the validity of the mortgage as a lien upon his ward's land. If it had no such authority, no reason existed for invoking its action. In order to obtain a decision in his favor, however, he was obliged to importune the court to repudiate the jurisdiction it had lately entertained of the identical matter in a suit brought against him by the predecessor in interest of his present antagonist. In the latter case the guardian is plaintiff and succeeds. In the other he was defendant and was defeated. What increment of authority did the court possess in the last case over that which it enjoyed before? If in the first case the court had declared the mortgage to be void and had refused to order a sale of the land, would its judgment have been a nullity because of want of jurisdiction? If not, and if the court had power to make a decision, with what paralysis was it smitten when the decision commenced to fall upon the other side? These questions the guardian does not attempt to answer.

It is frankly conceded that the district court has

jurisdiction to foreclose mortgages, but it is said that a court cannot give effective judgment upon a cause or subject-matter not brought within the scope of its judicial power, and the case of *Gille v. Emmons*, 58 Kan. 118, 48 Pac. 569, 62 Am. St. Rep. 609, is cited, in which it was held that a matter not presented by the pleadings was *coram non judice*.  The proposition is true and the case was well decided; but in this case an express allegation of the petition challenged the guardian and his ward to defend any interest they might claim in opposition to the validity of the mortgage, made the question of an alienation of a homestead without the joint consent of husband and wife an issue, brought it directly to the attention of the court and within its judicial power, and invoked a decision upon the subject so submitted.

It is said that the record shows upon its face that the land was outside the scope of the district court's authority, within the purview of certain statements made in *Rogers v. Clemmans*, 26 Kan. 522.  The proceedings reviewed in that case were instituted under the law authorizing the appropriation of the land of intestates to the payment of their debts.  An administrator had paid the preemption price of certain real estate entered by the decedent, and thereby had acquired a title which, under the laws of the United States, passed to his heirs, and a patent to that effect had been duly issued.  The heirs were not notified of the proceeding to sell the land, and the court said:

"No notice to the persons interested in the estate was given or published, and as notice, so far as the heirs are concerned, is jurisdictional, the order of sale and the proceedings based thereon, being without notice, are void. (*Mickel v. Hicks*, 19 Kan. 578, 21 Am. Rep. 161.)"

This is the substantial basis of the decision.  Mr.
Justice Brewer regarded the remainder of the opinion
as *dictum* and refused to subscribe to it.   Such mat-
ter, however, without any examination of its logical
ground, was made the basis of a commissioners' deci-
sion in the case of *Coulson v. Wing*, 42 Kan. 507, 22
Pac. 570, 16 Am. St. Rep. 503, and in its defense it
may be said that the land of the heirs was no more
subject to the payment of the decedent's debts than
the land of a stranger to the family would have been.
It required no investigation of facts and the solution
of no problem of law to determine to whom the land
belonged.   The land department of the United States
had forestalled any controversy over that matter.   So
much being settled incontestably, the question of the
liability of the land for the debts of one whose estate
never included it was not even debatable.   The court
could not follow the law and sell that land any more
than it could subject the land of the intestate to the
payment of debts other than his own.   The face of
the proceeding disclosed this state of affairs.

In the case at bar there is nothing in the record of
the first suit to show that the property was a home-
stead at the time the mortgage was executed.   True,
the court finds that the land was a homestead at the
date of the judgment, but that is not sufficient.   No
retrospective inference is deducible from that finding.
The residence of the parties might have changed
many times between the date of the mortgage and the
date of the judgment (see authorities cited in *Topeka
v. Chesney*, 66 Kan. 480, 71 Pac. 843), and instead of
the proceedings disclosing, at their inception, as an
undisputed fact, that the subject-matter of the contro-
versy was beyond the grasp of the court at all, they
presented an issue with respect to a matter the court

was compelled to investigate and decide—not as preliminary to jurisdiction, but as of the essence of the cause. Therefore, the case of *Rogers v. Clemmans*, supra, cannot apply.

It is said that the district court had no power to order a sale of the land in the foreclosure suit because its jurisdiction in that respect is fixed by the constitution as rigidly as it is by statute with respect to the punishment which may be imposed upon persons convicted of crime, and reference is made to the cases of *Ex parte Lange*, 18 Wall. 163, 21 L. Ed. 872, and *Hans Nielsen, Petitioner*, 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118. The doctrine of those cases was approved and followed in the case of *In re McNeil*, ante, page 366, 74 Pac. 1110, decided January 9, 1904, in which a prisoner sentenced to a fine and imprisoment under a statute allowing only a fine or imprisonment was discharged by *habeas corpus*. But these authorities throw no light upon this case. In pronouncing sentence the court has the statute before it, and is bound by the unquestioned and unquestionable letter of its provisions. It has no investigation to make or independent conclusion to form, and any transgression of the language of the law is inoperative and void. In this case it was necessary to ascertain the fact of homestead as any other uncertain question depending upon disputable evidence, and to determine as a serious and unsettled matter of law what facts are essential to joint consent. Neither constitution nor statute could dispense with an investigation of the facts, and neither constitution nor statute could furnish the conclusion which the district court should derive when the facts were found. It was compelled to act without guide, upon its own judgment and responsibility.

In the case of *Bigelow v. Forrest*, 9 Wall. 339, 19 L.

Ed. 696, a court having jurisdiction of a life-estate only undertook to dispose of the fee, as if a justice of the peace with jurisdiction of causes involving no more than $300 should undertake to render a judgment for $1000. The cases of *Elliott et al. v. Frakes*, 71 Ind. 412, and *Hutchinson v. Lemcke et al.*, 107 id. 121, 8 N. E. 71, are disposed of by the discussion of the case of *Rogers v. Clemmans*, supra. In the case of *Love v. Blauw*, 61 Kan. 496, 59 Pac. 1059, 48 L. R. A. 257, 78 Am. St. Rep. 334, the court had no authority to proceed at all. Other decisions cited on behalf of the guardian are as readily distinguishable as those just referred to, and still others afford no aid because they are couched in those generalities which are always the refuge of vague thought.

It adds nothing to the argument in favor of the guardian's position to descant upon the mandatory, peremptory, inexorable and inescapable character of the constitutional provision. The petition in the first action presented for the ultimate determination of the district court the questions : Did it have before it a mortgage given by the joint consent of husband and wife ? Did that mortgage cover premises occupied as a residence by the family of the owner ? Upon a trial, it so determined the facts that the interdiction of the constitution could not fall upon its advancing to a sale and conveyance of the land. Therefore, the first judgment was not open to attack in the second suit.

The guardian's case is presented, however, as if the findings of the court in the first case, when fairly construed, disclose the fact that the land was a homestead at the date of the mortgage, as well as at the date of the judgment; that the language of the finding that a portion of the land "is" a homestead, was not intended to betoken a nice discrimination of time,

but that it referred broadly to the entire transaction under investigation, and that a decision upon any other interpretation of the record must rest upon a quiddity.

If this view of the record be adopted, the questions propounded at the beginning of this discussion again arise. The court was under the legal necessity of investigating the truth of the facts alleged in the mortgagee's petition. At the close of the investigation, it was under the legal necessity of making a decision as to whether the mortgage was valid or not. The question was, Did the facts found disclose joint consent of husband and wife, within the meaning of the law; was such consent personal or could the guardian express it? The guardian and the mortgagee were each demanding judgment. This court by mandamus could have compelled a decision to be made. Was the decision for the plaintiff without jurisdiction, and void, while a decision for the defendants would have been with jurisdiction and valid? Such a conclusion would be utterly illogical under any rational theory of jurisdiction, and all attempts to justify it would necessarily confuse and befog the law. It could not be drawn, except through an undiscriminative and misconceived use of the modern doctrine that jurisdiction is limited to power to render the particular judgment in the particular case. Such a misinterpretation of that doctrine was censured by this court in the case of *Watkins v. Mullen*, 62 Kan. 1, 5, 61 Pac. 385, 386, 84 Am. St. Rep. 372, in the following language :

"In the opinion of the court of appeals a quotation is made from one of the notes in 12 A. & E. Encycl. of L. (1st ed.) 247, as follows : 'There is a tendency in the later decisions in the United States to hold that jurisdiction is not only the power to hear and determine, but also the power to enter the particular judg-

ment in the particular case.' If by this is meant that when a court invested with general jurisdiction over a particular subject-matter wrongly applies the law to a proved or admitted state of facts its judgment is outside its jurisdiction and subject to collateral review, we unhesitatingly say that no such tendency is to be observed in the later decisions, because such a tendency, instead of modifying the general rule or introducing an exception to it, would go to its absolute subversion.''

The principle involved in the case at bar is precisely analogous to that upon which the case of *Randolph v. Simon*, 29 Kan. 406, 411, was determined. A debtor had been committed under an execution against the person. He was entitled to a discharge, upon terms, in case of his inability to perform the act or to endure the imprisonment. Under an application made upon notice to the execution creditor, he was given leave to go to Illinois on account of the sickness of his wife. In a suit brought upon the debtor's bond for a breach of prison bounds in going to Illinois, the question was, What is the legal meaning of the term "inability," as applied to the facts? In finally deciding the case, Mr. Justice Brewer said :

"Now it is claimed that this order was void ; that the inability referred to in the statute is a personal and physical inability ; that no such inability was alleged ; and that therefore the court had no power to act. We cannot assent to this. Power is given by the statute to the court to grant a discharge on account of inability. Application was made under this statute. Notice of the application was given to the adverse party. Both parties were present, a showing was made, and the court acted. There was therefore a hearing before a competent tribunal, with jurisdiction of both parties ; and the order made after such hearing cannot be adjudged void. Whether the court erred in its ruling upon the facts, whether the order

was or was not erroneously made, can only be determined by proceedings in error. As long as there was enough to challenge judicial action, the order cannot be declared void in a collateral proceeding. (*Burke v. Wheat*, 22 Kan. 722; *Bryan v. Bauder*, 23 id. 95; *Hodgin v. Barton*, 23 id. 740.)"

In the case of *Burke v. Wheat*, referred to, the syllabus reads:

"Where a court has jurisdiction over the subject-matter of an action, and over the persons in the case, no error in its exercise can make the judgment void.

"Mere irregularities or errors in judicial proceedings afford no ground for an injunction to restrain the collection of a judgment; nor can such irregularities or errors be revised or corrected in such an action."

And in the case of *Bryan v. Bauder*, supra, Chief Justice Horton said:

"The filing of a petition and giving notice to the heirs are jurisdictional acts. The action of the court is upon the petition. All parties interested, after due notice, are required to come in and oppose the application. The statute contemplates a hearing of parties, and an adjudication upon the subject of the petition. Whether the petition is in proper form, or sets forth sufficient facts, are matters for the determination of the court in the exercise of its jurisdiction. Of course, if a mere blank paper is filed as a petition, jurisdiction would not attach, because there would be nothing for the court to act upon; but when a petition contains sufficient matters to challenge the attention of the court as to its merits, and such a case is thereby presented as authorizes the court to deliberate and act, although defective in its allegations, the cause is properly before the court, and jurisdiction is not wanting. This principle underlies all judicial proceedings."

In the foreclosure suit it was by no means obvious that joint consent of husband and wife did not appear.

It required an interpretation of the constitution to ascertain if it permits a guardian to join his ward in a conveyance of her homestead. The law was in dispute, and the very end and aim in view in the establishing of the district court was that it should determine the law between litigants. Hence, the decision of this court in the case of *Wolfley v. McPherson*, 61 Kan. 492, 496, 59 Pac. 1054, 1055, is precisely pertinent :

"In this case a judgment was rendered against a party upon a claim which she did make. In stating to the probate court the character of her claim she appropriated in her behalf the provisions of the law assigning it to the second class. The jurisdiction of the probate court was thus invoked, not only as to the existence of the claim, but as to the priorities of classification to which it was entitled. The statute regulating the matter of classification is not plain. It required construction to ascertain its meaning, and this court, subsequently to the original order of classification made by the probate court, was called upon to construe it. (*Cawood v. Wolfley*, 56 Kan. 281, 43 Pac. 236, 31 L. R. A. 538.) The mistake which the probate court made in construing it was an error only. Every question of law as well as fact was within its jurisdiction to determine. Its determination, though erroneous, was not void."

Many other cases enforce the same principle : *Hodgin v. Barton*, 23 Kan. 740 ; *Walkenhorst v. Lewis*, 24 id. 420, 425 ; *Prohibitory-amendment Cases*, 24 id. 700, 725 ; *Ames v. Brinsden*, 25 id. 746 ; *Meixell v. Kirkpatrick*, 28 id. 315 ; *Rowe v. Palmer*, 29 id. 337, 340 ; *Bank of Santa Fe v. Haskell County Bank*, 51 id. 50, 32 Pac. 627 ; *National Bank v. Town Co.*, 51 id. 215, 32 Pac. 902.

It is immaterial to the question of jurisdiction that the property was a homestead.

Clevenger v. Figley.

"Where the mortgagor, being sued for a foreclosure, pleaded his homestead exemption, and there was a judgment of foreclosure, ordering the property to be sold, upon which the property was sold, in a suit by the purchaser to recover the property, it was held that the defendant, the mortgagor, was concluded, by the judgment of foreclosure, from again pleading his homestead exemption.

"There is no better settled principle, than that the judgment or decree of a court of competent jurisdiction, directly upon the point, or necessarily involving the decision of the question, is conclusive between the parties and their privies, upon the same matters coming directly in question in a collateral action, in the same or another court of concurrent jurisdiction. There is nothing in the nature of the right of homestead, to exempt it from the operation of the general principle." (*Tadlock v. Eccles*, 20 Tex. 782, 73 Am. Dec. 213.)

"Judgments of courts of competent jurisdiction cannot be attacked collaterally. In court wherein judgment was rendered, question of paramountcy of defendant's homestead having been raised and decided adversely, same cannot be raised a second time in another suit brought to ascertain priorities of liens on defendant's realty." (*Spotts and al. v. The Commonwealth and als.*, 85 Va. 531, 8 S. E. 375.)

"The circuit court has jurisdiction of the subject-matter of partition, and, where the parties are before the court, its judgment directing a sale of the homestead of the widow and children cannot be collaterally attacked." (*Rolf v. Timmermeister*, 15 Mo. App. 249.)

"In this case the wife united in the mortgage, and was a party to the suit to enforce it, and the question whether it was a valid waiver was directly involved, and the court, in rendering the judgment, decided that the mortgage was valid and was a waiver of the exemption, and thereby concluded that question. Such being the case, the court had no power, on the motion to revive, to go behind the judgment to in-

quire into the validity of the mortgage, or to adjudge the appellees entitled to a homestead, but should have revived the judgment to sell the mortgaged property without terms or restrictions." ' (*Harpending's Ex'rs v. Wylie, etc.,* 76 Ky. 158, 163.)

Neither does it make a difference that the decision the court was required to make involved an interpretation of the constitution. The power and duty of the court to hear and decide was precisely the same as if the question had been one of statutory or common law. No doubt cases of conviction and incarceration under unconstitutional statutes now form a distinct class. But, as remarked by Mr. Justice Mason, in the case of *In re Jarvis,* 66 Kan. 329, 71 Pac. 576, the view that such judgments are subject to collateral attack on *habeas corpus* "results more from a jealous regard for the personal liberty of the citizen than from the force of the reasoning employed as applied to other subjects of litigation." And some irregularity in the development of the law of jurisdiction in civil cases has been occasioned by indiscriminate applications of the doctrine that an unconstitutional law is no law. But the question here involved is of a different character. If the foreclosure judgment was invalid, it was so because rendered upon a mortgage void as an attempt to impose a lien upon a homestead without the joint consent of husband and wife, contrary to the provisions of the constitution. Therefore, it lies within the field covered by those decisions, which are to the effect that a judgment is not subject to collateral attack because rendered upon an indebtedness or cause of action created against the terms of the constitution or other paramount law.

"In an action by the old State Bank of Illinois, upon a promissory note given in satisfaction of two judg-

ments recovered upon promissory notes executed to said bank in consideration of bills of said bank, which had been declared by the supreme court to be *bills of credit* emitted by the state, in contravention of the constitution of the United States, the defendants offered to show the consideration of the judgments in bar of the action. *Held*, that the evidence was inadmissible, and that the validity of the judgments could not be impeached in such action." (*Mitchell et al. v. State Bank of Illinois*, 2 Ill. 526.)

"Where, upon a mortgage made to the old State Bank of Illinois, a judgment had been rendered in favor of the bank, upon a proceeding, by *scire facias*, to foreclose the mortgage, and the mortgaged premises had been sold by virtue of the judgment, and an execution issued thereon, to a third person, and subsequently the supreme court had declared the act creating the bank unconstitutional: *Held*, that the judgment was valid till reversed, and that the title of the purchaser, under such judgment, could not be impeached, in an action of ejectment, upon the ground that the bank was unconstitutional." (*Buckmaster et al. v. Carlin*, 4 Ill. 104.)

In the case of *Cassel v. Scott*, 17 Ind. 514, a judgment had been rendered upon certain bonds which were void because the law providing for them was unconstitutional. In affirming an order denying an injunction against an enforcement of the judgment, the court said:

"For a reversal, it is argued that the act of 1853, referred to in the complaint, is in conflict with the constitution, and that the judgment on the bonds, having no foundation, save in that act, is a nullity. The first branch of the argument is correct. We have decided the act in question to be unconstitutional. (*Mershmeir v. The State*, 11 Ind. 482.) It does not, however, follow that the judgment is a nullity. It was founded upon the bonds and not on the act, and of the suit upon them the circuit court had full juris-

diction. The act being void, the bonds are simply unsupported by any valid consideration, and this being the case, the judgment rendered upon these bonds, though it may be deemed erroneous, is not void, and must be held operative until, in accordance with the ordinary rules of procedure, it is reversed by a court of error."

In the case of *Joseph Webster v. Hugh T. Reid*, Morris (Iowa), 467, 479, the supreme court of Iowa said:

"Similar in character are the objections that have been raised on the ground of the unconstitutionality of the acts of the legislature, through which the indebtedness accrued and the judgments were obtained. (16 Pick. 87, 26 Am. Dec. 631.) Judgments rendered under an unconstitutional law are not nullities."

In the case of *M'Neil v. Bright & al.*, 4 Mass. 282, 303, 304, a judgment confiscating land had been rendered under an absentee law of Massachusetts. In an action to recover seizure of the land, it was claimed that the judgment was in violation of the constitution of the state, and in violation of a treaty of the United States with Great Britain. The court said:

"If it be true that the provisional treaty is to be considered as a national contract, binding independent of the definitive treaty; that it operated a repeal of acts of confiscation; and that the judgment against Archibald M'Neil was, in truth, rendered after the date of that treaty, the demandant should have brought his writ of error, established the fact, and the judgment must have been reversed; but I know of no rule of law by which, on a trial of his *right* to the land he can do what is tantamount to a reversal of the judgment, which, admitting its validity, is conclusive against him. . . .

"There is one more objection made, which is, that the acts of confiscation were virtually repealed by the adoption of the constitution. And to prove this, the twenty-fourth article of the declaration of rights was

cited in the argument, and, with great force and
eloquence, pressed upon the consideration of the
court.   .   .   .

"If it be admitted that the constitution virtually
repeals the law in question, it certainly follows that
the judgment against Archibald M'Neil is erroneous,
and that it might be reversed, but it does not prove
that it is therefore a mere nullity, which can be taken
advantage of in this way. This would be inconsistent
with all the ideas I have entertained of the solemnity
and efficacy of judgments rendered by courts of com-
petent jurisdiction."

In the case of Northampton County v. Herman, 119
Pa. St. 373, 13 Atl. 277, a sheriff settled his accounts
for fees, under a statute governing the subject, with a
county tribunal whose act had the force of an adjudi-
cation. Subsequently the act relating to fees was de-
clared to be unconstitutional, and the sheriff sued the
county for a sum of money claimed to be due, but the
settlement was held to be conclusive.

In the case of Arnold v. Booth, 14 Wis. 180, a judg-
ment was rendered in the United States district court
under the fugitive-slave law, and chattels were sold
upon execution to satisfy it. In an action of replevin
for the chattels, it was claimed that the judgment was
void because the fugitive-slave law was unconstitu-
tional. The court decided that the question went to
the existence of the cause of action, and not to the
jurisdiction of the federal court, and that its decision
was binding. In the opinion it was said:

"Obviously the cause of action in the suit of Gar-
land against Booth was a penalty given by the fugi-
tive-slave law for a violation of its provisions. But
whether there was any law in existence giving this
right of action, and, if so, whether the law was valid
and binding, were legitimate matters of consideration
for the district court, as was the question of its viola-
tion. The court might have held that there was no

cause of action because the law was void. It had jurisdiction of the case thus to decide. This it seems to me is incontestable."

An analogous principle was applied in the case of *Hartman v. Ogborn*, 54 Pa. St. 120, 93 Am. Dec. 679, which was in its inception an action of ejectment brought to recover land that had been sold under a judgment foreclosing a mortgage. The court said :

"Mrs. Hartman executed a bond and mortgage in her maiden name of Mary Ann Coleman, five days after her marriage to Hartman, and that these instruments were void is not to be questioned. The disability of a married woman to encumber her separate, estate for the debt of another has been declared in many cases, and was repeated in respect of this very bond in *Keen v. Coleman*, 3 Wright, 299.

"But the question upon the record has respect to the judgment upon the mortgage, rather than to the mortgage itself. . . . Neither the judgment nor the proceedings under it have been questioned by a writ of error, a motion to open or set them aside, or in any other manner whatever, and the only question upon the trial of this cause was whether they could be impeached. collaterally. . . .

"And this transfer, be it observed, is made by the judgment and the sale thereon, not by virtue of the mortgage. What avails the objection, then, that the mortgage was null and void, or for any reason was inadequate as an instrument of transfer? The inadequacy of the mortgage might well have been urged against the suit by *scire-facias*, but after that has been permitted to ripen into an unquestioned judgment, the mortgage is merged in it, and is no longer open to attack."

There is no substantial dispute in the law that if the question of homestead had not been raised at all the judgment foreclosing the mortgage could not have been avoided in any subsequent proceeding other than by way of error or appeal because of that fact.

"A husband, against whom a decree of foreclosure of a mortgage on real estate has been duly obtained, cannot, in an action of forcible entry and detainer to recover possession after the period of redemption, set up the defense that his wife, who was not a party to the former suit, has a homestead interest in the mortgaged premises ; such fact, if a defense at all, being available in the former suit, must be deemed to have been adjudicated or waived." (*Dodd v. Scott*, 81 Iowa, 319, 46 N. W. 1057, 10 L. R. A. 260, 25 Am. St. Rep. 492.)

"It is not denied—indeed, it is a fact—that the appellant, as between him and the appellees, Lancaster, &c., as his creditors, was entitled to a homestead in said real estate ; but his entire interest in this real estate having been sought to be sold to satisfy the demand of these creditors, and he having appeared and defended upon the merits, and having failed to set up his homestead right, which would have been a complete bar to the appellee's action, if the real estate was not worth more than one thousand dollars, and if more than one thousand dollars, then a bar to the extent of a thousand dollars' worth of the land, his effort to set up his right to his homestead came too late. To allow a defendant to split his defenses, relying upon one until judgment is rendered upon it against him, and at the next term open the judgment and plead another defense, and so on, would be a mockery of legal justice. Therefore, it is a universal rule that the final judgment of a court of competent jurisdiction is not only conclusive of all issues actually decided, but of all that might and should have been decided by it. And there is no good reason why the assertion of a homestead right should be made an exception to this salutary rule." (*Hill, &c., v. Lancaster, &c., Lancaster, &c. v. White*, 88 Ky. 338, 343, 11 S. W. 74, 75.)

"Where after a recovery in ejectment by a widow of her dower in land occupied jointly by the holder of the record title and a brother, who were joined as

defendants, the widow secures a partition of the land through a suit instituted for that purpose, in which the brother and sister are made defendants, the brother cannot defend in a second action of ejectment, brought by the widow to recover the land set off to her as her dower in the partition proceedings, on the ground that he had homestead rights in the land, and that his wife was not joined as a defendant in the first ejectment suit.''   (*Bemis v. Conley*, 95 Mich. 617, 55 N. W. 387.)

''Parties who have an interest in land as a homestead, and are made parties to a proceeding in the probate court to sell the land in aid of assets, and fail to set up their claim of homestead therein, cannot afterwards maintain an action for said land against the purchaser at such sale.''   (*Haddon v. Lenhardt*, 54 S. C. 88, 31 S. E. 883.)

'' Where a judgment has been fairly rendered against a husband and wife, with an order for the sale of land, upon which the creditor claimed a lien for the payment of his debt, the wife cannot, by subsequent suit, have such order revoked, upon the ground that it subjects the homestead to sale.''   (*Baxter v. Dear*, 24 Tex. 17, 76 Am. Dec. 89.)

''Where a party sued to foreclose a mortgage founded on a vendor's lien, and recovered judgment, and purchased the property at sheriff's sale, and then sued in ejectment to recover possession, it was too late for the defendant to plead that the property was his homestead at the time the judgment of foreclosure was rendered.''   (*Chilson v. Reeves*, 29 Tex. 275.)

''Where a purchaser of land sold under attachment sued in equity the attachment debtor and his wife, praying for possession of the premises, that he be adjudged the owner thereof, and that certain deeds under which the wife claimed title be declared fraudulent and void, a decree granting the relief sought, although neither it nor the pleadings made reference to respondents' homestead rights, is a bar to an action

to have said decree declared void, and to restrain the execution of a writ of possession, brought on the ground that the land constituted their homestead." (*Graham v. Culver*, 3 Wyo. 639, 29 Pac. 270, 30 Pac. 957, 31 Am. St. Rep. 105.)

In some of these cases it is apparently assumed that the doctrine of collateral attack may be expressed in terms of *res judicata*. The confusion, however, is one of name and not of principle. But if any one of them be well determined, there was no reason for reinvestigating the homestead controversy in the case at bar when an issue upon the precise question had been tendered and a judgment had been rendered respecting it in the foreclosure suit.

Finally, it is to be noted that it makes no difference in deciding the legal questions arising upon this record that the party interested in maintaining the land to be a homestead free of encumbrance is insane. Any human tribunal, to whose attention the circumstance is called, must be saddened that a high-thoughted human life should meet with obscuration, and that blind years should merely lead this widow's unlamped feet from night to night. But for all her business affairs the law provides her a guardian, quickens his conscience with an oath, and protects her property with his bond. He must sue and defend for his ward. His conduct of litigation in her behalf is authoritative and must be binding. (Gen. Stat. 1901, ch. 60.) Neither is the liberality with which all laws relating to the homestead are construed forgotten. A high public policy looking to the welfare and good order of society requires that quarrels once composed by the judgment of a court should not again be fomented. Aside from the public disturbance and annoyance which the toleration

46—68 KAN.

of continued disputation over decided causes would entail, it would open fruitful fields to thrifty fraud, expose the weak to the limitless oppression of the strong, and enable the rich to wreak unchecked ruin upon the poor. The prevailing policy has been approved by the sense of order and justice in men for centuries. In the Justinian code it is said:

"Again if an action, real or personal, has been brought against you, the obligation still subsists and in strict law, an action might still be brought against you for the same object, but you are protected by the exception *rei judicatæ*." (Inst., Lib. IV, Tit. XIII, 5.)

" If you have been sued either upon a real or personal action, the obligation nevertheless remains; and, therefore, in strict law, you may again be sued upon the same account; but you may plead the former trial in bar, and be aided by the exception *rei judicatæ*." (Cooper's Justinian; 367.)

In the time of Charles II of England,

"An English ship was taken at sea by a French vessel after the peace made between us and the Dutch, wherein France was left out, and the ship was carried into France, and condemned there as a Dutch ship, and afterwards the ship came into England; and in an action of trover brought by the owner of the ship against the vendee it was adjudged, that by the sentence in the court of France, though it were an unjust sentence, the property was altered; and the vendee had judgment." (2 Lord Raymond, 936.)

"This is a principle of general jurisprudence founded on public convenience and sanctioned by the usage and courtesy of nations." (2 Kent Com. 120.)

In this case, after the time for a review of the judgment enforcing the guardian's mortgage had elapsed, that judgment stood as the authoritative evidence of the ascertained rights of the individuals who were

parties to it.   If erroneous, it was not a nullity, and it should have made an end of the controversy.   Since the validity and the conclusive character of the first judgment appeared upon the face of the pleadings in the second suit, the motion for judgment against the plaintiff upon the pleadings should have been sustained.

Therefore, the judgment of the district court is reversed, and the cause is remanded.

All the Justices concurring.